ACCEPTED
13-14-00428-cv
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/15/2015 4:46:42 PM
DORIAN RAMIREZ
CLERK

NO. 13-14-00428-CV

_____

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
5/15/2015 4:46:42 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI / EDINBURG, TEXAS

_____

ALMA INVESTMENTS, INC.,

Appellant,

v.

BAHIA MAR CO-OWNERS ASSOCIATION, INC.,

Appellee,

_____

On Appeal From the 197th Judicial District Court
of Cameron County, Texas

_____

**BRIEF OF APPELLEE**

_____

LANCE A. KIRBY
State Bar No.  00794096
lakirby@jgkl.com
PAOLA R. GUERRERO
State Bar No. 24038929
pguerrero@jgkl.com
JONES, GALLIGAN, KEY & LOZANO, L.L.P.
Town Center Tower, Suite 300
2300 West Pike Boulevard
Post Office Drawer 1247 (78599-1247)
Weslaco, Texas 78596
Telephone: (956) 968-5402
Telecopier: (956) 969-9402

ATTORNEYS FOR APPELLEE,
BAHIA MAR CO-OWNERS ASSOCIATION, INC.

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**:

Alma Investments, Inc.

**Appellant's Counsel**:

Richard B. Phillips, Jr.
THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Telecopier: (214) 969-1751
rich.phillips@tklaw.com

**Appellee**:

Bahia Mar Co-Owners
      Association, Inc.

**Appellee's Counsel**:

Lance A. Kirby
Paola R. Guerrero
JONES, GALLIGAN, KEY & LOZANO, L.L.P.
Town Center Tower, Suite 300
2300 West Pike Boulevard
Post Office Drawer 1247
Weslaco, Texas 78599
Telephone: (956) 968-5402
Telecopier: (956) 969-9402
lakirby@jgkl.com
pguerrero@jgkl.com

# TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................................... ii

Table of Contents ....................................................................................... iii, iv, v

Index of Authorities ................................................................. vi, vii, viii, xi

Statement of the Case ..................................................................................x

Statement on Record References ...........................................................xi

Reply to Appellant's Issues Presented ................................................... xii

Statement of Facts ..........................................................................................1

Summary of the Argument ..................................................................................9

Argument and Authorities .................................................................................11

Reply to Appellant's Issue No. 1 .........................................................................11

      A trial court's ruling on a motion for sanctions is reviewable by an appellate court for abuse of discretion. The trial court did not abuse its discretion since it had the power to make the orders that Appellant failed to follow and because the death penalty sanctions were clearly justified as it was apparent that no lesser sanctions would promote Appellant's compliance with the Texas Rules of Civil Procedure. ..............11

    A.    The two deposition orders cannot serve as a basis to attack the death penalty sanctions. ..................................................................12

        1.    Appellant waived its right to object to the depositions. ...........12

        2.    The two deposition orders were valid orders............................14

    B.    The trial court did not commit error by ordering the death penalty sanctions because it considered the factors enumerated

by the Texas Supreme Court to determine that the sanctions were warranted. ..................................................................20

    1.    The death penalty sanctions directly relate to the offensive conduct committed by Appellant. ...........................21

    2.    The death penalty sanctions were not excessive relative to Appellant's wrongful conduct because the trial court properly considered and ordered lesser sanctions prior to imposing the death penalty sanctions. .....................................24

    3.    The death penalty sanction was appropriate because Appellant's conduct justified the presumption that its defenses lacked merit.................................................................29

Reply to Appellant's Issue No. 2 ........................................................31

    Appellant's Issue 2 should be overruled because the trial court did not commit error by awarding attorney fees since the declaratory judgment action requested independent relief and since the request for attorney fees was not made moot by the sale of the property. ....................31

Reply to Appellant's Issue No. 3 ........................................................38

    Whether the trial court erred by awarding prejudgment interest on the attorney fee award is an issue of first impression in the Thirteenth Court of Appeals. Neither the Texas Supreme Court nor this Court have specifically determined whether an award of prejudgment interest on attorney fees that have been paid to the date of judgment is proper. ..............................................................................................38

Conclusion ...........................................................................................41

Prayer ...................................................................................................41

Certificate of Compliance ...................................................................42

Certificate of Service ..........................................................................43

Appendix

1 — Commercial Contract dated November 20, 2009 ............................ Tab 1

2 — Order on Plaintiff's Motion to Compel
      (Supp. CR 271) ............................................................. Tab 2

3 — Order Partially Granting Plaintiff's Motion for Audit
      (CR 29) ..................................................................... Tab 3

4 — Order Granting Alternative Venue and Method of Depositions
      (CR 27) ..................................................................... Tab 4

5 — Order
      (CR 30) ..................................................................... Tab 5

6 — Order
      (Supp. 281-282) ........................................................... Tab 6

7 — Plaintiff's Original Petition & Request for Disclosure ................... Tab 7

# INDEX OF AUTHORITIES

**Cases**                                                                    **Page**

*A.V.I, Inc. v. Heathington*, 842 S.W.2d 712
   (Tex. App. – Amarillo 1992, writ denied) ..................................................39

*Allright, Inc. v. Van Scoyoc*, 784 S.W.2d 942
   (Tex. App. – Houston [14th Dist.] 1990, no writ) .......................................32

*Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640
   (Tex. 2005) .................................................................................................35, 36

*Allstate Petrol. Operations, Inc. v. Morgan*, No. 11-96-013-CV,
   1996 WL 33674377, at *3 (Tex. App. – Eastland
   Mar. 21, 1996, no writ) ................................................................................17

*Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820
   (Tex. App. – Corpus Christi 1999, pet. denied) ...............................................1

*In re Ampace Freightliners, Inc.*, No. 05-00-00371-CV, 2000 WL 354775
   (Tex. App. – Dallas, April 7, 2000, no pet.) ................................................12

*American Flood Research, Inc. v. Jones*, 192 S.W.3d 581
   (Tex. 2006) ..................................................................................................13

*Berry Property Management Inc. v. Bliskey,* 850 S.W.2d 644
   (Tex. App. – Corpus Christ 1993, writ dism'd by agr.) ........................10, 40

*Bohmfalk v. Linwood*, 742 S.W.2d 518
   (Tex. App. – Dallas 1987, no writ) .............................................................12

*Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149
   (Tex. 1998) .................................................................................................35, 36

*Carbona v. CH Med., Inc.*, 266 S.W.3d 675
   (Tex. App. – Dallas, 2008, no pet.) .............................................................39

*Cavnar v. Quality Control Parking Inc.*, 696 S.W.2d 549

(Tex. 1985) ............................................................................................38

*Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850
 (Tex. 1992) ............................................................................................28

*Cire v. Cummings*, 134 S.W.3d 835
 (Tex. 2004) ...............................................................11, 26, 27, 28, 30

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238
 (Tex. 1985) ............................................................................................11

*Etan Industries, Inc. v. Lehmann,* 359 S.W.3d 620
 (Tex. 2011) .................................................................................34, 36, 37

*Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314
 (Tex. App. – San Antonio 2007, pet. denied) ........................................11, 20

*First State Bank, Bishop v. Cappell & Handy, P.C.*, 729 S.W.2d 917
 (Tex. App. – Corpus Christi 1987, writ ref'd n.r.e.) ..................14, 15, 19, 20

*Fisher v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 424 S.W.2d 664
 (Tex. Civ. App. – Houston [14th Dist.] 1968, writ ref'd n.r.e.) ...................14

*Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769
 (Tex. App. – Dallas 2011, no pet.) ............................................32, 35, 36, 37

*Hartford Casualty Insurance Co.v. Budget Rent-A-Car Systems, Inc.*,
 796 S.W.2d 763 ( Tex. App. – Dallas 1990, writ denied) ......................36, 37

*Imagine Auto. Grp. v. Boardwalk Motor Cars, Ltd.*, 430 S.W.3d 620
 (Tex. App. – Dallas 2014, pet. filed) ........................................................20

*Kidd Pipeline & Specialties, Inc. v. Campagna*, 712 S.W.2d 238
 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e.) ....................14, 19

*MBM Financial Corp. v. Woodlands Operating Co*, 292 S.W.3d 660
 (Tex. 2009) ............................................................................................34

*MMR Intern. Ltd. v. Waller Marine, Inc.*, CIV.A. H-11-1188,
 2013 WL 6491186, at *12 (S.D. Tex. Dec. 10, 2013) ...............................38

*Marrs & Smith P'ship. v. D.K. Boyd Oil & Gas Co., Inc.*, 223 S.W.3d 1
    (Tex. App. – El Paso 2005, pet. denied) ........................................................39

*In re Nalle Family Limited Partnership,* 406 S.W.3d 168
    (Tex. 2013) ........................................................................................................40

*Nova Cas. Co. v. Turner Construction Co.*, 335 S.W.3d 698
    (Tex. App. – Houston [14th Dist.] 2011, no pet.) ..........................................38

*Response Time v. Sterling Commerce (N. Am.)*, 95 S.W.3d 656
    (Tex. App. – Dallas 2002, no pet.) ...............................................................20

*Sanus/N.Y. Life Health Plan, Inc. v. Dube-Seybold-Sutherland Mgmt., Inc.*,
    837 S.W.2d 191 (Tex. App. – Houston [1st Dist.] 1992, no writ) ...............17

*Thompson v. Dart*, 746 S.W.2d 821
    (Tex. App. – San Antonio 1988, no writ) .....................................................14

*TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913
    (Tex. 1991) ...........................................................................................12, 28, 30

*Universal Printing Co. v. Premier Victorian Homes, Inc.* 73 S.W.3d 283
    (Tex. App. – Houston [1st Dist.] 2001, pet. denied) ....................................34

*Weaver v. AIDS Services of Austin, Inc.*, 835 S.W.2d 798
    (Tex. App. – Austin 1992, writ denied) ........................................................34

*Williams v. Colthurst*, 253 S.W.3d 353
    (Tex. App. – Eastland 2008, no pet) ..............................................................39

**Statutory Authority**

Declaratory Judgment Act ...........................................................9, 10, 35, 36, 37

Texas Civil Practice & Remedies Code

    Section 37.009 ................................................................................................32

Texas Property Code

Section 81.209 ................................................................2, 22

Section 81.209(c) ...............................................................22

Section 82.057(a) ...............................................................37

## Rules and Regulations

Texas Rules of Civil Procedure

Rule 176.3 ...................................................................16, 18

Rule 192.6(a) ....................................................................12

Rule 199.3 ....................................................................16, 18

Rule 199.2(b)(1) ................................................................15

Rule 199.2(b)(2) ................................................................16

Rule 199.2(b)(2)(B) .........................................................15, 18

Rule 199.2(b)(2)(C) .........................................................15, 16

Rule 199.2(b)(2)(E) .........................................................15, 16

Rule 199.4 ....................................................................12, 13

## STATEMENT OF THE CASE

*Nature of the case.* This dispute involves Alma Investments, Inc.'s (hereinafter "Alma" or "Appellant") inappropriate collection and use of maintenance fees, inappropriate charging of management fees, and its breach of the declaration restrictions for the Bahia Mar Resort. (Supp. CR 103-104.)

*Course of Proceedings.* The trial court imposed death penalty sanctions against Appellant by striking its answer and all of its defenses, and entering a default judgment against it as to liability due to its violation of three discovery orders. (CR 173-175.) Two of the orders violated were sanctions orders pertaining to the depositions of Appellant's sole owner and sole officers. (CR 30; CR 66-68; Supp. CR 281-282; App. 5, 6.) The third was an order for production of accounting records, audit of Appellant's financial records and an order for a monetary deposit. (CR 29; App. 2, 3.)

*Trial Court Disposition.* After a jury trial on damages, Bahia Mar Co-Owner's Association, Inc. (hereinafter "Bahia Mar" or "Appellee") was awarded actual damages and prejudgment interest for Appellant's breach of fiduciary duty, attorney fees under the Declaratory Judgment Act, and prejudgment interest on the attorney fees paid up to the date of judgment. (2d Supp. CR 4.)

**STATEMENT ON RECORD REFERENCES**

Appellant is Alma Investments, Inc. (hereinafter "Alma" or "Appellant"). Appellee is Bahia Mar Co-Owners Association, Inc. (hereinafter "Bahia Mar" or "Appellee"). The record on this appeal consists of a Clerk's Record, Supplemental Clerk's Record, Second Supplemental Clerk's Record, Reporter's Record, and Supplemental Reporter's Record. The Clerk's Record will be hereinafter referred to as "CR [page]". The Supplemental Clerk's Record will be hereinafter referred to as "Supp. CR [page]". The Second Supplemental Clerk's Record will be hereinafter referred to as "2d Supp. CR [page]". The Reporter's Record will hereinafter be referred to as "[volume] RR [page]". The Supplemental Reporter's Record will hereinafter be referred to as "[volume] Supp. RR [page]". References to Appellee's appendix will be designated as "App. [tab]".

## REPLY TO APPELLANT'S ISSUES PRESENTED

## REPLY TO APPELLANT'S ISSUE 1

A trial court's ruling on a motion for sanctions is reviewable by an appellate court for abuse of discretion. The trial court did not abuse its discretion since it had the power to make the orders that Appellant failed to follow and because the death penalty sanctions were clearly justified as it was apparent that no lesser sanctions would promote Appellant's compliance with the Texas Rules of Civil Procedure. Appellant's Issue 1 should be overruled.

## REPLY TO APPELLANT'S ISSUE 2

Appellant's Issue 2 should be overruled because the trial court did not commit error by awarding attorney fees since the declaratory judgment action requested independent relief and since the request for attorney fees was not made moot by the sale of the property.

## REPLY TO APPELLANT'S ISSUE 3

Whether the trial court erred by awarding prejudgment interest on the attorney fee award is an issue of first impression in the Thirteenth Court of Appeals. Neither the Texas Supreme Court nor this Court have specifically determined whether an award of prejudgment interest on attorney fees that have been paid to the date of judgment is proper.

**STATEMENT OF FACTS**

This case is not the first case between these same parties to reach the court of appeals.[1] The first case involved the issue of whether Alma could own numerous condominium units and exempt itself from paying maintenance fees for upkeep of the common facilities while charging all of the other condominium owners. This court held that Alma must pay its share of the fees and that it was against public policy to allow Alma to exempt itself. Alma never followed the court's decision and operated the Bahia Mar Maintenance Association improperly which resulted in the filing of this suit.

This appeal arises out of a lawsuit filed on July 20, 2006, in the 197th Judicial District of Cameron County by the co-owner's association of the Bahia Mar Resort against the Bahia Mar Maintenance Association (hereinafter "BMMA") and Appellant. (CR 22.) Appellant is the former owner of both the Resort and of BMMA. (Supp. CR 103; Supp. CR 109; Supp. CR 239.) The basis of the lawsuit involved Appellant's inappropriate collection and use of the maintenance fees paid by each co-owner's association member to BMMA and Appellant's breach of the declaration restrictions. (Supp. CR 103-104.) Specifically, Bahia Mar alleged that Appellant and BMMA failed to properly maintain, manage and insure the Bahia Mar Resort common facilities, in addition

---

[1] The first case between these parties was *Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820, 822 (Tex. App. – Corpus Christi 1999, pet. denied).

to commingling funds and expenses between them and charging fees for the purported services provided. (Supp. CR 110-112.) Bahia Mar further alleged that Alma failed to allow the owners to vote on officers and directors as required by Texas law. (Supp. CR 112-113.) While the underlying lawsuit was pending, Appellant sold the Bahia Mar Resort for $10,000,000.00 in late 2009 early 2010. (App. 1; 4 Supp RR 22-23.)

During the litigation, Bahia Mar sought an audit of the financial records of BMMA. (Supp. CR 315.) On January 19, 2010, the trial court ordered an audit under Texas Property Code § 81.209 for the years 2000-2008. (Supp. CR 318.) Appellant and BMMA ignored the order which required Bahia Mar to compel the audit. (Supp. CR 271.) After a hearing, Alma was ordered to deposit $10,000.00 into the registry of the court and to produce all books and records for BMMA for the period of 2004-2008 to the auditor by April 30, 2010. (App. 2; Supp. CR 271.)

The audit was first conducted for the year 2004 and the results were provided to Bahia Mar on December 9, 2011. (Supp. CR 313.) Amongst other things, the audit revealed serious problems with the booking and accounting of BMMA and revealed that Alma had *not fulfilled its fiduciary obligations* due to the lack of proper documentation, the absence of an annual audit and the lack of timely accountability to the owners. (Supp. CR 335-336.) Alma failed to comply with the court's order to turn over the accounting records which made it impossible to

conduct a true audit. (Supp. CR 322-323.) The auditor for the 2004 audit stated, in part, that:

> ALMA did an inadequate job of managing the financial, budgeting and accounting matters of BMMA. . . .Based on the results of our special audit procedures, the lack of proper documentation for the expenses, the absence of an annual audit, and the lack of timely accountability to the unit owners, we **_do not believe Alma fulfilled its fiduciary obligations._**

(Supp. CR 335.) Based on the results of this audit, Bahia Mar filed a Motion to Enforce Order Granting Plaintiff's Motion for Audit, seeking the audit of the records for the other years as had been previously ordered in January 2010. (Supp. CR 312.) On April 11, 2012, the trial court granted Bahia Mar's motion and ordered the financial books and records of BMMA to be audited for the year 2005. (CR 29; App. 3.) In addition, Appellant was ordered to deposit $20,000.00 with the registry of the court to pay the court appointed auditor. (CR 29; App. 3.) Appellant failed and refused to comply with this order. More than a year after the date for compliance, their counsel claimed (without providing any evidence) that it did not have the funds to make the deposit. (2 Supp. RR 10-11; 5 Supp. RR 19.) This claim is highly suspect considering the property sold for $10,000,000.00, most of which went directly to Alma related to its 501(c)(3) sale, as noted on the settlement statement. (App. 1.) Alma never challenged the court order that required an audit and never took any action to comply with it. In addition to failing to produce documentation related to the audit and failing to pay for the audit, Alma refused to

3

make its corporate representatives, sole owner and officers available for deposition.

While Alma was ignoring the audit order, Bahia Mar attempted to depose Alma's sole owner, Kahil Pakideh and his son Martin Pakideh who was the only other corporate officer. (CR 27; CR 30; Supp. CR 281-282; App. 4, 5, 6.) These depositions are the subject of three separate orders signed by the trial court. (CR 27; CR 30; Supp. CR 281-282.; App. 4, 5, 6.)

The first order was entered on December 6, 2011 and granted an alternative venue and method of taking the depositions. (CR 27; App. 4.) As stated therein, the depositions of the Pakidehs were to be taken "in the place of each deponent's residency, or via telephone or video conferencing technology acceptable to the Court." (CR 27; App. 4.) Based on this order, counsel for Bahia Mar made numerous efforts to schedule the depositions. (Supp. CR 346; Supp. CR 348; Supp. CR 350-351.) However, Alma refused to cooperate in getting the depositions scheduled using alternate means. (Supp. CR 346; Supp. CR 348; Supp. CR 350-351; 2 Supp. RR 22-23.)

On August 23, 2013, a status hearing was held at which the trial court had discussion pertaining to Appellant's failure to comply with the December 6th discovery order and Bahia Mar's need for the depositions. (2 Supp. RR 21-30.) Alma had its in-house counsel, Josh Farr present for the hearing as a representative

4

of Alma, but not as its counsel. (2 Supp. RR 5.) Counsel for Bahia Mar informed the trial court that the Pakidehs' depositions were necessary because the corporate representative that had previously been produced by Alma did not have knowledge of events prior to 2008. (2 Supp. RR 25-26.) Bahia Mar's counsel additionally stated that he would be willing to depose the witnesses at the Brownsville, Cameron County office of counsel for Klas Management, if Mr. Sorola (who was representing Klas Management) was ultimately retained by Alma. (2 Supp. RR 26.) The depositions of the Pakidehs were being discussed as corporate representative depositions since the previous corporate representatives had no knowledge of Alma's operations prior to 2008. (2 Supp. RR 22.)

At the status hearing, the trial court ordered the depositions of Appellant's two owners as corporate representatives to be held in Hidalgo County, essentially as sanctions for Appellant's failure to cooperate in working out video conferencing for the depositions.[2] (2 Supp. RR 26-30.) This second order was signed on September 6, 2012 (although orally ordered on August 23, 2012), and stated that the depositions of Kahil Pakideh and Martin Pakideh were to be held on September 28, 2012 at the law offices of Jones, Galligan, Key & Lozano, L.L.P., in Weslaco, Texas, unless agreed otherwise. (2 Supp. RR 29-30; CR 30; App. 5.) After

---

[2] The trial judge emphasized that the order was necessary because the parties had not been able to come to an agreement in spite of the court's attempt to accommodate Appellant as best as it could. (2 Supp. RR 29-30.)

5

ordering the depositions, the court took up the motion to withdraw filed by Kevin Landau as to his representation of Alma and granted his withdrawal. (2 Supp. RR 37-38.) Alma was present for the hearing through its in-house counsel Josh Farr, and thus, received notice of the court's order. (2 Supp. RR 35-37.) During the hearing, the trial court also imposed a date by which Appellant was to hire new counsel within 10 days of August 23, 2012. (2 Supp. RR 37-38.) Appellant failed to hire new counsel until three weeks after the date it was ordered to do so even though in-house counsel was present for the court's order. (CR 32; CR 67.) Additionally, appellant failed to tender the witnesses for the September 28, 2012 depositions. (CR 67.) Furthermore, appellant failed to object to the depositions or file a motion to quash the depositions that were scheduled for September 28, 2012.

After the Pakidehs failed to appear for their depositions, Plaintiff, on October 25, 2012, noticed the depositions of Defendant's Corporate Representatives Kahil Pakideh and Martin Pakideh. (CR 56-58; CR 63-65.) That same day, Appellant filed its Motion to Quash Plaintiff's Notice of Oral Deposition of Defendant's Corporate Representative Kahil Pakideh and its Motion to Quash Plaintiff's Notice of Oral Deposition of Defendant's Corporate Representative Martin Pakideh. (CR 52-58; CR 59-65.) In response, Bahia Mar filed a Motion for Contempt and Motion for Sanctions on October 30, 2012, for violation of the previous deposition order and violation of the audit order. (CR 66.)

On November 13, 2012, Appellant filed affidavits on behalf of Martin Pakideh and Kahil Pakideh in support of the October 25th motions to quash their depositions. (CR 77-80; CR 81-84.) The affidavits were never offered into evidence nor did the court take judicial notice of them. Thereafter, on November 19, 2012, Plaintiff noticed a third corporate representative (Kahil and Martin Pakideh being the first two) deposition without naming the person. (CR 88-91.) As a result, Alma filed another motion to quash the third corporate representative deposition on November 27, 2012. (CR 85-95.) Bahia Mar filed its Plaintiff's Response to Defendant's Motion to Quash Depositions on December 11, 2012, stating that Alma's corporate representative had never been deposed on the topics requested by the November 19th deposition notice and that the owner(s) of Alma were the only persons with knowledge of when and why the company had been dissolved. (CR 96-97.)

On December 18, 2012, the court signed the third deposition order which stated that the depositions of Kahil Pakideh and Martin Pakideh were to be held on January 25, 2013, again at the law offices of Jones, Galligan, Key & Lozano, L.L.P. (Supp. CR 281-282; App. 6.) The trial court explicitly found at the hearing on the matter that the Pakidehs transacted business in Cameron County and could be ordered to be deposed. (4 Supp. RR 42-43.) The trial court denied Alma's

motions to quash the depositions.[3] (Supp. CR 281-282; App. 6.) Nevertheless, Appellant did not make its witnesses available for their depositions as ordered. (CR 152; CR 155.)

On January 30, 2013, Plaintiff filed its First Amended Motion for Contempt and Motion for Sanctions for Violation of Court Orders, complaining about Appellant's failure to comply with the court's two discovery sanctions orders and the audit order. (CR 131.) On May 16, 2013, the trial court granted the motion and entered the Order on Plaintiff's Motion for Contempt and Motion for Sanctions (the "Sanctions Order"). (CR 173-175.) By the Sanctions Order, the trial court imposed death penalty sanctions against Alma, striking its answer and all of its defenses and entering a default judgment against it as to liability on Bahia Mar's remaining claims of breach of fiduciary duty and declaratory judgment. (CR 173.)

Alma did not challenge the Sanctions Order, and trial on the issue of damages was begun on January 21, 2014. (1 RR 3.) On the date of trial, however, Alma filed an Original Writ of Mandamus and Motion for Emergency Relief in this Court, complaining about the death penalty sanctions. The writ and motion were denied that same day by Justices Rodriguez, Garza and Perkes in a per curiam opinion. The next day, after trial had commenced, Alma filed a Petition for Writ of

---

[3] A review of the transcript of the December 13, 2012 hearing shows that Appellant neither offered the Pakidehs' affidavits into evidence, nor did the trial court take judicial notice of them. (2 Supp. RR 1-40.)

8

Mandamus and Motion for Emergency Relief with the Texas Supreme Court. The Court denied the petition for writ and motion on February 28, 2014.

The trial court entered judgment for Bahia Mar after the jury trial on damages. (2d Supp. CR 4.) Bahia Mar was awarded actual damages and prejudgment interest for Alma's breach of fiduciary duty, attorney fees under the Declaratory Judgment Act, and prejudgment interest on the attorney fees paid by Bahia Mar up to the date of judgment. (2d Supp. CR 4.) Thereafter, Alma's second motion for new trial was denied and this appeal followed. (CR 238.)

## SUMMARY OF ARGUMENT

Appellant's violation of the audit order and deposition orders justified the death penalty sanctions entered by the trial court. Alma violated the trial court's April 2012 order by failing to produce its accounting records and by failing to deposit $20,000 with the registry of the court so that a court supervised audit of its financial records could be conducted. Alma did not challenge the order nor did it explain why it failed to comply. In addition, Alma violated the trial court's September 2012 and December 2012 discovery orders by failing to make its witnesses available for deposition in Hidalgo County, even though these orders were entered as sanctions for its failure to comply with a discovery order that allowed the depositions to be taken at their convenience. Prior to the entry of the Sanctions Order, these depositions and audit were the subject and cause of

9

numerous delays, motions to compel, motions for continuance, and hearings. (Supp. CR 338; Supp. CR 356; 2 Supp. RR 21-31; 3 Supp. RR 39-65.) Based on Appellant's flagrant disregard for the trial court's orders and the Rules of Procedure, in addition to thwarting Bahia Mar's attempts at establishing its liability and damages, the trial court's imposition of the death penalty sanctions was "just."

The attorney fees awarded to Bahia Mar under the Declaratory Judgment Act (hereinafter "DJA") are appropriate. Bahia Mar asserts that the award of attorney fees by the trial court was proper, as the death penalty sanctions conclusively established Appellant's liability under the DJA prior to the award, and the dispute over the attorney fees was a live controversy before the trial court. The DJA was not used as a vehicle to obtain attorney fees. The DJA action sought different relief than the relief sought under other causes of action. Whether the award of prejudgment interest of the attorney fees that had been paid (as opposed to awards in contingency cases) to the date of judgment should be upheld, however, is an issue of first impression in the Thirteenth Court of Appeals. While other appellate courts in this State have found awards of prejudgment interest on such attorney fees to be proper, neither this Court's decision in *Berry Property Management Inc. v. Bliskey,* 850 S.W.2d 644 (Tex. App. – Corpus Christ 1993, writ dism'd by agr.), nor decisions made by the Texas Supreme Court directly address this issue.

## ARGUMENT AND AUTHORITIES

## <u>REPLY TO APPELLANT'S ISSUE 1</u>

A trial court's ruling on a motion for sanctions is reviewable by an appellate court for abuse of discretion. The trial court did not abuse its discretion since it had the power to make the orders that Appellant failed to follow and because the death penalty sanctions were clearly justified as it was apparent that no lesser sanctions would promote Appellant's compliance with the Texas Rules of Civil Procedure. Appellant's Issue 1 should be overruled.

Whether a trial court abused its discretion is not based on whether the reviewing court believes the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). When reviewing a trial court's imposition of sanctions, appellate courts view conflicts in the light most favorable to the trial court's ruling, and resolve all inferences in favor of the trial court's judgment. *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 319 (Tex. App. – San Antonio 2007, pet. denied). Reversal of a trial court's ruling on a motion for sanctions is warranted only if the court's ruling was arbitrary or unreasonable. *Cire,* 134 S.W.3d at 838.

The record in this case demonstrates that Appellant's wrongful conduct and flagrant disregard for the trial court's orders during the course of the litigation warranted the death penalty sanctions. Moreover, the record demonstrates that the

11

trial court properly considered the factors enumerated by the Texas Supreme Court in *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex. 1991) when ordering the sanctions. As a result, the trial court did not abuse its discretion in imposing the death-penalty sanctions against Appellant.

A.     The two deposition orders cannot serve as a basis to attack the death penalty sanctions.

Appellant's attack of the deposition orders as a means to challenge the death penalty sanctions is meritless. Contrary to Appellant's argument, the two orders mandating the depositions to be held in Hidalgo County were proper orders. Furthermore, by failing to object to the depositions ordered at the August 23, 2012, hearing, Appellant waived any objection to the time and place of the depositions and cannot now complain.

1.     Appellant waived its right to object to the depositions.

To object to the time and place designated for an oral deposition, the party or witness must file a motion for protective order or a motion to quash the notice of deposition. Tex. R. Civ. P. 192.6(a), 199.4. A party objecting to the deposition has a duty to object as soon as possible and the objection must be made before the date and time of the deposition. *Bohmfalk v. Linwood*, 742 S.W.2d 518, 520 (Tex. App. – Dallas 1987, no writ) (holding that the witness waived any objection to the deposition by failing to object prior to the date of the deposition); *In re Ampace*

*Freightliners, Inc.*, No. 05-00-00371-CV, 2000 WL 354775 (Tex. App. – Dallas, April 7, 2000, no pet.) (not designated for publication) (concluding that the party waived any objection to the deposition notice or duces tecum because it was required to raise any objection at or before the time of the deposition). If the motion is filed by the third business day after service of the notice of deposition, an objection to the time and place of the deposition stays the oral deposition until the motion can be determined. Tex. R. Civ. P. 199.4

Here, the trial court ordered the date and place of the Pakidehs' depositions during the status hearing held on August 23, 2012, at which in-house counsel for Appellant was present. (2 Supp. RR 26-27.) The order that was signed on September 6, 2012, specified that the depositions were to be held on September 28, 2012, at 9:00 am at the law offices of Jones, Galligan, Key & Lozano, L.L.P., in Weslaco, Texas, unless agreed otherwise. (CR 30; App. 5.) Appellant did not object to the time or place of these depositions as allowed by the Rules, and chose instead to simply ignore the trial court's order. *See American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006) (noting that counsel should have moved to stay the depositions as allowed by the Rules and holding that sanctions against counsel were appropriate for employees' failure to appear at scheduled depositions).

In fact, Appellant did not object to the depositions until October 25, 2012, after it received Bahia Mar's subsequent deposition notices for the same depositions that had already been ordered once before. (CR 30; CR 56-58; CR 63-65; CR 52-58; CR 59-65; App. 5.) Consequently, Appellant waived its right to object the depositions and cannot now complain that the orders were invalid and the sanctions for its failure to comply with the orders are not warranted. Even if this court finds that the objections to the depositions were not waived, the trial court entered appropriate orders for these depositions.

2.     The two deposition orders were valid orders.

The rules as to the taking of depositions vest broad discretion in the trial court. *Fisher v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 424 S.W.2d 664, 670 (Tex. Civ. App. – Houston [14th Dist.] 1968, writ ref'd n.r.e.). The trial court has broad discretion to determine whether a deposition should be taken and can control the time, place, and manner of taking depositions. *Thompson v. Dart*, 746 S.W.2d 821 (Tex. App. – San Antonio 1988, no writ). Because a trial court has great latitude in ordering discovery, such orders should not be reversed absent an abuse of discretion. *First State Bank, Bishop v. Cappell & Handy, P.C.*, 729 S.W.2d 917, 922 (Tex. App. – Corpus Christi 1987, writ ref'd n.r.e.); *Kidd Pipeline & Specialties, Inc. v. Campagna*, 712 S.W.2d 238, 241 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The Texas Rules of Civil Procedure provide the locations where the deposition of a witness can be taken. For corporate representative depositions under 199.2(b)(1), the depositions may be taken in the county of suit. Tex. R. Civ. P. 199.2(b)(2)(C). Bahia Mar was seeking to take the Pakidehs' depositions as corporate representatives. (2 Supp. RR 22.) It is important to note that Bahia Mar's need for these corporate representative depositions stemmed, in part, from the fact that the corporate representative that had been designated by Alma did not have information prior to 2008. (2 Supp. RR 25-26.) After the Pakidehs failed to appear for the court ordered depositions on September 28, 2012, the corporate representative notices were sent out again. (CR 56-58; CR 63-65.) Appellant attempted to quash the notices, but Appellant's motions to quash were denied. (CR 281-282; 4 Supp. RR 48-49.)

The fact that the depositions were not ordered to occur in Cameron County, as required under either Rule 199.2(b)(2)(B) or (b)(2)(C), but in the adjoining county of Hidalgo, does not mean the orders were improper. The trial court was authorized to order the depositions be held at any other convenient location. See Tex. R. Civ. P. 199.2(b)(2)(E). And the record demonstrates that the trial court considered the convenience of the Pakidehs when ordering the location of the depositions. (4 Supp. RR 43-44.) See Tex. R. Civ. P. 199.2(b)(2)(E). Thus, the trial court was authorized to order the depositions to take place in Hidalgo County, even

though it was not the county of suit. See *First State Bank, Bishop*, 729 S.W.2d at 922-923 (holding that the order requiring the company chairman to appear at a location outside the county of suit was reasonable because the witness had been difficult and the court had gone to great lengths to oblige the company and chairman). Since the depositions were noticed as corporate representative depositions (Alma did not object to the failure to include topics), the place for the depositions was appropriate under the rules and the court's findings.

Even if this Court ignores the fact that the depositions were noticed as corporate representatives, the depositions were appropriate for other reasons. Under Rule 199.2(b)(2), the deposition of a witness can be held in "the county where the witness is employed or regularly transacts business in person." Tex. R. Civ. P. 199.2(b)(2)(B). If the witness is a "party or a person designated by a party" to testify on its behalf, the deposition can be taken in the county of suit. Tex. R. Civ. P. 199.2(b)(2)(C). The deposition can also be held "at any other convenient place directed by the court in which the cause is pending." Tex. R. Civ. P. 199.2(b)(2)(E). In addition, if the witness "is a party or is retained by, employed by, or otherwise subject to the control of a party," the Rules allow the witness to be deposed at those same locations, in addition to any other location permitted under Rule 199.2(b)(2). *See* Tex. R. Civ. P. 176.3, 199.3.

Based on its broad discretionary power, the authority granted by the Rules, and the evidence before it, the trial court determined that Appellant's witnesses could be deposed in Hidalgo County. The trial court was the trier of fact upon the issues of control over the witnesses, the extent to which they transacted business in the county, and the reasonableness of the place designated for the taking of their depositions. *See Allstate Petrol. Operations, Inc. v. Morgan*, No. 11-96-013-CV, 1996 WL 33674377, at \*3 (Tex. App. – Eastland Mar. 21, 1996, no writ) (not designated for publication) (citing *Sanus/N.Y. Life Health Plan, Inc. v. Dube-Seybold-Sutherland Mgmt., Inc.*, 837 S.W.2d 191, 199 (Tex. App. – Houston [1st Dist.] 1992, no writ). In that role, the trial court could draw reasonable inferences from the evidence presented. *See id.* With regard to Alma's two owners, the trial court explicitly found that:

> [Y]our people, for better or for worse, owned property in Cameron County that got itself into litigation. So your people are here in Cameron County, and need to --- they are a corporation, and these are, I believe, people they control.

(3 Supp. RR 42.)

> [F]rom what I understand, . . . I am under the impression that the main thing, this will be what qualifies as a small business, and they had a number of people down here, and the people that basically owned the corporation  were on the ground, manager, local management, and they were involved in it.

(3 Supp. RR 44.) Based on the evidence, the trial court determined that the Pakidehs were under the control of Alma and were involved in managing the

17

corporation. *See* Tex. R. Civ. P. 176.3, 199.3. The trial court also determined that the evidence supported a finding that the Pakidehs transacted business in person in Cameron County. *See* Tex. R. Civ. P. 199.2(b)(2)(B). Accordingly, the trial court stated:

> [T]he court is going to deny the motion to quash. In so doing, I'm taking into account those matters that have been raised today as well as things that have been raised in the past relative to this issue where this issue has been both procedurally litigated in recent months and, secondly, on the issue of whether or not – because the Pakidehs raise issues in their affidavits about the extent of their involvement with the company Alma, the defendant, one of the defendants, the court is going to take into account everything that has transpired in this case. From the beginning the court has heard numerous hearings on numerous things, witnesses under oath. And to the extent there has been testimony in those matters referencing Pakideh this and Pakideh that and so forth. The Court takes all that into account and does find that these individuals have sufficient connection with the actual portion of parts of this case that may involve them as witnesses, that they do have sufficient knowledge to be required to attend. They were doing business in Cameron County. And I'm going to order their depositions to occur.

(4 Supp. RR 42-43.) Although it was not admitted into evidence, Martin Pakideh specifically acknowledged in his affidavit that as an owner of Alma, he was involved with the property. (CR 79.) Similarly, Khalil Pakideh's purported affidavit (also not admitted into evidence and signed by Klas Management LLC) admitted that he visited the property approximately 3 times a year for 5 days to make sure it was "in good shape" and admitted that he was the sole owner. (CR 84.)

18

Thus, based on the trial court's findings and the Rules, the trial court was authorized in ordering the Pakidehs be deposed in Texas. Furthermore, trial court orders mandating depositions in circumstances similar to those here, where the overall nature and circumstances of the cause of action make it necessary to depose the witness as the sole possessor of certain corporate knowledge, have been found to be proper. *See Kidd Pipeline & Specialties, Inc.*, 712 S.W.2d at 241 (finding that the former president of the company could be deposed in spite of claims that the she was not a party to the lawsuit).

It is clear that this is not a situation where the trial court abused its discretion by ordering the deposition of a non-resident, non-party witness be held in a place not authorized by Rule 199.2, as is claimed by Appellant. Nor is this a situation warranting reversal of the sanctions due to an invalid deposition order. In fact, appellate courts have affirmed the imposition of sanctions against corporate entities where their witnesses have failed to comply with deposition orders that were found to be valid. *See First State Bank*, 729 S.W.2d at 920-922 (holding that the failure to comply with discovery requests and the trial court's orders permitting the deposition of the company chairman justified sanctions); *Kidd Pipeline & Specialties Inc.*, 712 S.W.2d 238, 241-242 (holding the trial court did not abuse its discretion in dismissing the case due to the witness' failure to comply with discovery requests and court orders).

19

Because the deposition orders entered by the trial court in this case were proper, Appellant's argument that the death penalty sanctions order should be vacated fails.

B.     The trial court did not commit error by ordering the death penalty sanctions because it considered the factors enumerated by the Texas Supreme Court to determine that the sanctions were warranted.

Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Imagine Auto. Grp. v. Boardwalk Motor Cars, Ltd.*, 430 S.W.3d 620, 633 (Tex. App. – Dallas 2014, pet. filed); *Response Time v. Sterling Commerce (N. Am.)*, 95 S.W.3d 656, 659 (Tex. App. – Dallas 2002, no pet.). In assessing sanctions, the trial court may consider everything that has occurred during the litigation. *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 319 (Tex. App. – San Antonio 2007, pet. denied); *First State Bank, Bishop v. Cappell & Handy, P.C.*, 729 S.W.2d 917, 921 (Tex. App. – Corpus Christi 1987, writ ref'd n.r.e.). Here, the record demonstrates that the death penalty sanctions were warranted because Appellant had so abused the rules of procedure, in spite of the trial court's imposition of lesser sanctions, that its position could be presumed to lack merit and it would have been unjust for it to have been allowed to present it.

1.    The death penalty sanctions directly relate to the offensive conduct committed by Appellant.

The trial court did not abuse its discretion because the record shows that the sanctions directly related to Appellant's offensive conduct and its disregard for three court orders.

The death penalty sanction was, in part, a final sanction for Appellant's failure to comply with two prior deposition sanctions orders and an audit order. (CR 173-174.) Notably, Appellant did nothing to attack the two discovery orders or audit order. Instead, Appellant simply ignored the court's mandates, causing significant delays in the proceeding. (Supp. CR 340-341; Supp. CR 358-359; 2 Supp. RR 21-22; 3 Supp. RR 40-42.) In addition, Appellant's actions ultimately prevented Bahia Mar from obtaining information that was essential to its claims and which could only be provided by the Pakidehs. For example, since Alma allegedly "no longer exists" as of 2012, no persons other than the Pakidehs could provide information regarding the entity and its financial status. (CR 84, 96-97.) And although the deposition of a corporate representative had been taken, the record shows that the person designated did not have information prior to 2008. (2 Supp. RR 25-26.)

The death penalty sanction was also imposed due to Appellant's failure to comply with the order for audit of BMMA's financial records. (CR 29; CR 173-

21

174; Supp. CR 271; App. 2, 3.) Similar to the deposition orders, Appellant's failure prevented Bahia Mar from obtaining essential information to its lawsuit. In addition to failing to pay for the audit, Alma was ordered to turn over accounting documents which it never did. (Supp. CR 271.) The results of the audit were necessary for Bahia Mar to determine if money had been comingled, if it had been properly accounted for, if the financial statements were accurate, if the expenses had been comingled and if Alma took money from BMMA. (Supp. CR. 340.) Based on the results of the previous year's audit, it was clear that the 2005 audit would have contained information relevant to its claims. Moreover, Bahia Mar was entitled to the information by law under the Texas Property Code Ann. § 81.209, which states that "the books and records of a condominium regime must comply with good accounting procedures and must be audited at least once a year by an auditor who is not associated with the condominium regime." Tex. Prop. Code Ann. § 81.209(c) (West 2014). Appellant's counsel claimed (without providing any evidence) that it did not comply with the order because it did not have the financial ability to do so, and that it was denied its constitutional due process rights as a result. However, Alma should have been obtaining and paying for an audit of the financial records of BMMA on an annual basis under Texas law without being court-ordered to do so, and its failure to comply with its legal obligation cannot be the basis for such a claim. (Appellant's Brief at 24) (5 Supp. RR 23.) Moreover,

22

the veracity of Appellant's claim is highly questionable given that it sold the Bahia Mar Resort for $10,000,000.00.[4] (5 Supp. RR 22; App. 1.) Because Appellant refused to make its witnesses available for deposition, Bahia Mar was also denied the opportunity to obtain essential information regarding Alma's ability to pay for the audit and its use of those sale proceeds.[5] (CR 99; CR 103-106; 5 Supp. RR 22.)

It is clear from the record that the sanction bore a direct relationship to the abuse committed by Appellant and to its flagrant disregard for the trial court's orders. Appellant's actions in refusing to make its witnesses available for deposition and refusing to conduct an audit and to turn over its financial records hindered the discovery process, caused significant delays, and ultimately thwarted Bahia Mar's efforts to establish Alma's liability and damages. As a result, the trial court found that:

> There is a direct relationship between the sanction and the offensive conduct in that Alma has been previously ordered to remit $20,000.00 into the registry of the Court to pay for a court ordered audit of their books. For more than one year, Alma has failed and refused to remit such funds. . . . The Court also finds that Alma's refusal to abide by Court orders requiring depositions has prevented Plaintiff from obtaining discovery that it is entitled to obtain. Alma should not be

---

[4] The sale of the Bahia Mar Resort is now the basis of a separate lawsuit styled *Bahia Mar Co-Owners Association, Inc. v. MSP Partners Realty, LLC, et al*., Cause No. 2014-DCL-04099, in the 197th Judicial District of Cameron County, in which Bahia Mar asserts that the sale proceeds were fraudulently transferred. (App. 7.)

[5] In fact, the record shows that Appellant attempted to use to its benefit Bahia Mar's lack of evidence regarding the Pakidehs' ownership of Alma and the sale of the Bahia Mar Resort. (5 Supp. RR 23-26.)

allowed to present defenses when it refuses to abide by discovery orders and other orders of the court.

(CR 174.) The finding in the Sanctions Order that the failure to comply with the three discovery orders was directly attributable to Alma is also supported by the record. (CR 174; 5 Supp. RR 52-53.) Appellant was not only the entity owned by the deponents, but it was also the entity that owned and controlled BMMA. (Supp. CR 103.) Therefore, the death penalty sanction was properly directed against the abuse committed by Alma and towards remedying the prejudice caused Bahia Mar by its actions.

    2.    The death penalty sanctions were not excessive relative to Appellant's wrongful conduct because the trial court properly considered and ordered lesser sanctions prior to imposing the death penalty sanctions.

Appellant claims that the death penalty sanctions were excessive because the trial court neither considered nor ordered lesser sanctions before entering the death penalty sanctions. This claim is not supported by the record and consequently, fails.

In support of its argument that the sanctions were excessive, Appellant states that there were a number of lesser sanctions that would have been effective. (Appellant's Brief at 25.) However, the record demonstrates that none of the lesser sanctions suggested by Appellant would have achieved their purpose. Appellant argues that the trial court could have ordered the Pakidehs to be deposed by

24

telephone, videoconference or in Michigan. (Appellant's Brief at 25.) However, this is exactly what the trial court ordered in the original discovery order that Appellant ignored. (CR 27; App. 4.) Appellant also argues that Alma could have been ordered to pay for Bahia Mar's counsel to travel to Michigan to take the depositions. (Appellant's Brief at 26.) However, counsel for Bahia Mar made that same request to Appellant and Appellant did not agree or even attempt to come to agreeable terms regarding the request. (Supp. CR 346; Supp. CR 348; Supp. CR 350.) Furthermore, by this time, Alma's counsel was taking the position that Alma was unable to pay for anything. An order to pay for travel expense would have also been ignored. Additionally, Appellant argues that the trial court could have excluded testimony from either of the Pakidehs unless they agreed to be deposed in Texas. (Appellant's Brief at 27.) Excluding their testimony would not have cured the problem. Bahia Mar wanted and was entitled to their testimony. Their testimony would have supported Bahia Mar's case. (CR 30; Supp. CR 281-282; App. 6.) In regard to the order for audit, Appellant argues that Bahia Mar could have paid for it itself. (Appellant's Brief at 28.) However, Texas law required Appellant to conduct the audit and the fact that it was requested in litigation does not change that. Additionally, Alma never provided the financial records they were ordered to provide so there was nothing to audit. (Supp. CR 271; App. 2.)

Appellant then states that the trial court could have ordered discovery to determine Alma's ability to pay for the audit. (Appellant's Brief at 28.) However, Bahia Mar attempted to obtain this information through the Pakidehs' court-ordered depositions that did not occur. (CR 99; CR 103-106; 5 Supp. RR 22.) Finally, Appellant argues that the sanction could have been limited to its books and records for 2005. (Appellant's Brief at 28.) However, the record shows that Appellant's misconduct extended past the 2005 audit, as Appellant ignored an order for audit of years 2000-2008.[6] (Appellant's Brief at 28; Supp. CR 318.) Thus, it is clear that the lesser sanctions suggested by Appellant would not have been effective.

Turning toward the actions taken by the trial court, the Sanctions Order reflects a finding that the sanction was no more severe than necessary. (CR 174.) The record shows that the trial court considered other lesser sanctions before imposing the death penalty sanctions, but determined that those would not have been effective. *See Cire v. Cummings*, 134 S.W.3d 835, 840 (Tex. 2004) (stating that "the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed."). For example, the trial court found that due to Alma's having failed for more than one year to remit the funds ordered for the audit, "monetary sanctions against Alma are not

---

[6] Appellant incorrectly states that Bahia Mar "never sought an audit for any other year." (Appellant's Brief at 28.)

26

effective." (CR 173-174.) The trial court also found that due to Appellant's "egregious misconduct," a sanction lesser than the death-penalty sanctions could not be imposed. (CR 174.) The Sanction Order states:

> A lesser sanction cannot be imposed because Alma committed egregious misconduct in failing to comply with three separate court orders. This Court considered lesser sanctions, but they would not have been effective. Monetary sanctions would not be effective because Alma has failed and refused to pay $20,000.00 to the registry of the Court to conduct another year's audit, and counsel for Alma has stated that Alma does not have the ability to pay any monetary sanctions. Further, Mr. Pakideh has stated in his affidavit filed November 12, 2013, that 'Alma no longer exists.' A lesser sanction of again ordering the witnesses to appear for depositions would not be effective as that has been ordered twice, and Alma has not complied with this order.

(CR 174.)

In addition, the Sanctions Order reflects a finding that lesser sanctions had been ordered against Appellant prior to it being subjected to the death penalty sanctions.[7] (CR 174 at paragraph b.) Because the trial court recognized that Appellant failed to comply with the two deposition sanctions orders, it consequently found that "[t]hose orders were not sufficient as sanctions as the witnesses failed to appear for their depositions." (CR 174; 5 Supp. RR 26-27.) Thus, the record shows that the trial court properly ordered lesser sanctions.[8] The

---

[7] Consequently, a finding by the trial court that the misconduct was of the exceptional nature that would have allowed it to impose death penalty sanctions without trying lesser sanctions first, as required by *Cire*, was not necessary. (Appellant's Brief at 30.)

[8] The record even shows that Appellant considered as sanctions the order requiring the deposit of $20,000 into the registry of the court. (5 Supp. RR 19.)

27

trial court was not required to order every lesser sanction that could possibly be imposed before imposing death penalty sanctions. *See Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004).

The situation here is not like that found in either *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex. 1991) or *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992), cases relied upon by Appellant, where the trial court failed to consider or even test lesser sanctions. *See TransAmerican Natural Gas Corp.,* 811 S.W.2d at 918 (additionally finding that no determination was made regarding whether the party or its attorney was at fault for the discovery abuse); *Chrysler Corp.*, 841 S.W.2d at 850 (finding no direct relationship between the conduct and the sanction, that the sanction was excessive, and no evidence to support that the defenses lacked merit). Instead, the record here demonstrates that the trial court did not abuse its discretion because it not only considered the availability of lesser sanctions, but also ordered other lesser sanctions, and found that those sanctions were ineffective. (CR 174; 5 Supp. RR 52.) Furthermore, the Sanction Order contains an "extensive, reasoned explanation of the appropriateness of the sanction imposed, demonstrating that the trial court considered the availability of less stringent sanctions," as required. *See Cire*, 134 S.W.3d at 843.

Consequently, the record and Sanctions Order reflect that due to Appellant's misconduct and flagrant disregard for the three court orders, the ineffectiveness of ordering the witnesses to appear for deposition for the fourth time, and the fact that Appellant claims that it does not have the ability to pay any monetary sanctions and continued to refuse to produce accounting records as ordered, the death penalty sanctions ordered in this case were not excessive.

3.      The death penalty sanction was appropriate because Appellant's conduct justified the presumption that its defenses lacked merit.

Appellant's argument that its conduct did not support a presumption that its defenses lacked merit also fails. By claiming that Bahia Mar should have taken different action with regard to the depositions and audit, minimizing the effect of the 2004 audit results, disregarding that it was required under Texas law to obtain (and pay for) the 2005 audit requested, and ignoring the fact that it had previously been granted the opportunity to have the depositions taken at their convenience, Appellant's argument fails. (Appellant's Brief at 32-35.) Regardless of Appellant's characterization of the events, the fact is that Appellant violated three court orders, two of which were imposed as lesser sanctions. (CR 174 at paragraph b.) Due to Appellant's actions, the trial court correctly determined that Appellant's conduct justified the presumption that its defenses lacked merit. Accordingly, the Sanctions Order states:

Alma's conduct justifies the presumption that its defenses lack merit. Alma has refused to allow the depositions of owners of Alma in this case. In affidavits filed with the court on November 12, 2013, Khalil Pakideh and Martin Pakideh acknowledge that they were owners of Alma and state that Alma no longer exists. Alma has refused to allow another audit to be conducted. In the audit that was conducted for the 2004 year the court appointed auditor, Moises Gomez, on October 10, 2011, concluded as follows: 'Based upon the results of our special audit procedures, the lack of proper documentation of expenses, the absence of an annual audit, and the lack of timely accountability to the unit owners, we do not believe Alma fulfilled its fiduciary obligations.' Alma's failure to allow additional audits and the failure to appear for depositions justifies the death penalty sanctions.

(CR 174.) Consequently, the facts and circumstances of this case meet the Texas Supreme Court's directive when it stated that:

Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it.

*Cire*, 134 S.W.3d at 839 (quoting *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918). This is exactly what happened in this case. Alma was ordered in 2010 to produce its books and records for the 2004-2008 time period. (Supp. CR 271; App. 2.) Alma did not even provide the records for the audited year of 2005 and provided nothing for the remaining years. (Supp. CR 322-323.) Because the record demonstrates that Alma refused to make its witnesses available for deposition and refused to allow an audit of its financial records despite the imposition of lesser

sanctions, the trial court did not abuse its discretion in imposing the death penalty sanctions.

## REPLY TO APPELLANT'S ISSUE 2

Appellant's Issue 2 should be overruled because the trial court did not commit error by awarding attorney fees since the declaratory judgment action requested independent relief and since the request for attorney fees was not made moot by the sale of the property.

The relief requested by the declaratory judgment was a substantial reason for the filing of the lawsuit and the claim makes clear that one of the major issues involved was the owners' right to vote on directors and officers of BMMA. Plaintiff's 10th Amended Petition states:

Taxation without representation…the founding bedrock of the United States of America…the reason for the revolution. The thirteen British colonies and citizens of America grew weary of paying taxes to Great Britain while not having any representatives in the British Parliament. Great Britain was happy to tax the colonies but refused to give them any political voice for their taxes. Alma Investments has taken a similar approach since the year 2000 after the judgment of the Court became final on appeal. Alma Investments did not like the Court's ruling requiring it to pay its share of maintenance fees. Since that time, Alma Investments has ruled as a dictator while taking money from owners in the form of assessments. Since the ruling on the previous case became final, Alma Investments has refused to give any voice or any vote to the persons who are paying these assessments. Such conduct violates public policy and violates the spirit of the condominium act, and this conduct as well as the poor management (occurring after the previous judgment) has forced the filing of this subsequent lawsuit.

Appellant's liability under the declaratory judgment act was established prior to trial at the time the death penalty sanctions were ordered. (CR 173.) When

31

a default judgment is rendered, the defendant's liability for all causes of action pled is conclusively established and all allegations of fact in the petition, except the amount of damages, are deemed admitted. *See Allright, Inc. v. Van Scoyoc*, 784 S.W.2d 942, 945 (Tex. App. – Houston [14th Dist.] 1990, no writ). Therefore, Appellant's liability under the DJA, and thus, Bahia Mar's right to the declaration granted, was conclusively established before the damages and attorney fees were awarded.

At the time of trial, the only issue involving the declaratory relief requested was the amount of fees that should be awarded to Bahia Mar through its request for attorney fees under the DJA. (CR 173.) Under the Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). A party to a declaratory judgment action is not required to prevail to recover an award of attorney fees. *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 773 (Tex. App. – Dallas 2011, no pet.). However, as Appellant's liability was established by the death penalty sanctions, the trial court did not err in awarding Bahia Mar its attorney fees as the prevailing party to the action.

Appellant's arguments that the declaratory judgment claim was used as a vehicle to obtain otherwise impermissible fees and that there was no real controversy between the parties also fail to establish Appellant's right to relief.

First, the record does not support the argument that the claim was made solely to obtain the fees. As demonstrated by Bahia Mar's 10th Amended Petition, the declaratory judgment claim sought specific relief, separate and apart from the relief sought by the claim for breach of fiduciary duty. The declaratory judgment action sought the right to vote and a declaration

> that the Maintenance Association as run by Alma is contrary to public policy and void in that it does not provide for officers and a board with voting rights being granted pro-rata to its members in accordance with the square footage that they lease.

(Supp. CR 114.) On the other hand, the breach of fiduciary claim asserted that Alma breached its fiduciary duty

> by using Maintenance Association funds to pay the bills of Alma Investments, by comingling Maintenance Association funds with those of Alma Investment, by failing to property maintain the common elements of the Maintenance Association, by overcharging the owners, and by failing to pay its own dues.

(Supp. CR 120.) and

> by failing to obtain insurance on the common elements which caused damage when there was no insurance for the damage caused by Hurricane Dolly.

(Supp. CR 121.) Clearly, the declaratory judgment claim does not merely duplicate the issues litigated in the breach of fiduciary duty claim. A determination that Appellant violated Texas law by not allowing members of BMMA to vote is neither related or necessary to a determination that Appellant breached its fiduciary duty to those members through its mishandling of BMMA's financial and

33

maintenance issues. The breach of fiduciary claim could not have achieved the equitable result that Texas law required. The owners had the right to vote which was being denied to them. Unlike the circumstances in *Etan Industries, Inc. v. Lehmann,* 359 S.W.3d 620 (Tex. 2011) and *MBM Financial Corp. v. Woodlands Operating Co*, 292 S.W. 3d 660 (Tex. 2009), cases relied on by Appellant, the declaratory claim here was not used for the sole purpose of obtaining an award of attorney fees.[9] *See Etan Indus. Inc*., 359 S.W.3d at 624 (finding that the declaratory judgment duplicated the trespass claim by declaring that neither the easements nor the pole attachment agreements gave the right to place lines on the properties); *MBM Fin. Corp*., 292 S.W. 3d at 671 (finding that the declarations about timely notice and designation of a return location were part of the contract claim). Since Bahia Mar's pleadings demonstrate that the issues involved with its claims are not duplicative, Appellant's argument cannot be a basis to conclude that the award was erroneous.

Next, Appellant argues the declaratory judgment claim was "merely pretextual" because there was no real controversy between the parties at the time of

---

[9] Instead, the situation here can be more likened to that in *Universal Printing Co. v. Premier Victorian Homes, Inc*. 73 S.W.3d 283 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) and *Weaver v. AIDS Services of Austin, Inc.*, 835 S.W.2d 798 (Tex. App. – Austin 1992, writ denied). Although Appellant cited these to support its position, the appellate court in each case rejected the argument that the declaratory judgment claim was used solely as a means to obtain attorney's fees and found that its use was appropriate. *See* 73 S.W.3d at 296 (holding that the declaratory judgment action was appropriate); 835 S.W.2d at 803 (rejecting the appellant's attempt to characterize the declaratory judgment action as a means of providing an "avenue to attorney's fees".)

trial. While it is true that Alma sold the Bahia Mar property for $10,000,000.00 in 2010, and it is true that the new owner is allowing the owners to vote, that did not make the dispute over attorney fees moot. (App. 1.) Alma never allowed the owners to vote and never agreed that it had an obligation to do so. Regardless, a dispute over attorney fees is a "live controversy" that prevents a declaratory judgment claim from becoming moot. *See Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1998); *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642-643 (Tex. 2005); *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 773 (Tex. App. -Dallas 2011, no pet.). The 10th Amended Petition specifically sought an award of attorney fees pursuant to the Declaratory Judgment Act. (Supp. CR 124.) At the time of the trial on damages, Bahia Mar continued to seek those attorney fees and continues to assert its entitlement to the award in this appeal. Thus, Bahia Mar's claim for those fees is a live controversy.

The situation here is similar to that in *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 773 (Tex. App. – Dallas 2011, no pet.). In that case, the executor of a homeowner's estate filed a declaratory judgment action against the members of the homeowner's family and a prospective buyer of the homeowner's house, seeking a declaration that it had authority to sell the house. *Id*. at 771-772. Prior to the day of trial, the homeowner's son dropped his objections to the sale and after being assigned the rights in the contract for sale by the buyer, became the

35

ultimate purchaser of the property. *Id*. at 772. As a result, the plaintiff amended its petition and withdrew its declaratory judgment claim, but continued to seek attorney fees. *Id*. The trial court awarded the fees, and upon the defendants' complaints, the appellate court was faced with determining whether the plaintiff's claim for the fees prevented the declaratory judgment action from becoming moot when the house was sold. *Id*. at 772-773. After analyzing the Supreme Court's decisions in *Camarena* and *Allstate Insurance Co*., the court concluded that those cases "stand for the proposition that a case under the Declaratory Judgment Act remains a live controversy, even if all requests for substantive declaratory relief become moot during the action's pendency, as long as a claim for attorneys' fees under the Act remains pending." *Id*. at 774-775. Thus, the court determined that the plaintiff's claim for attorney fees kept the claim from becoming moot even though the homeowner's son dropped his objection to the sale and the house was sold prior to trial. *Id*. at 775. Alma never allowed voting. It simply sold the property, however, the claim for attorney fees remained after the sale.

Like in *Hansen*, Bahia Mar's declaratory judgment claim was not moot, in spite of the change in Alma's involvement with the Bahia Mar Resort. The decisions in *Etan Industries, Inc.* and *Hartford Casualty Insurance Co.v. Budget Rent-A-Car Systems, Inc.,* 796 S.W.2d 763 ( Tex. App. – Dallas 1990, writ denied), cases relied upon by Appellant, do not change this result. First, the court in each of

36

those cases concluded that the declaratory judgment claims were merely duplicative of the other claims asserted. *See Etan Indus. Inc*., 359 S.W.3d at 624; *Hartford Cas. Ins. Co*., 796 S.W.2d at 772 (noting that the plaintiff had no need for declaratory relief because a "declaratory relief plea may not be coupled to a damage action simply in order to pave the way to recover attorney fees"). Indeed, the court in *Hansen* noted that cases in which the declaratory judgment claim duplicated other claims were distinguishable from the case before it. *See Hansen*, 346 S.W.3d at 775. Second, the courts in *Etan Industries, Inc.* and *Hartford Casualty Insurance Co*. did not consider the issue of whether the plaintiff's claim for attorney fees under the Declaratory Judgment Act prevented the claim from becoming moot, as is the case here. *See Hansen*, 346 S.W.3d at 775.

Consequently, the trial court did not err in awarding attorney fees and Appellant's Issue 2 should be overruled. The finding in the court's judgment to the effect that "Alma's operation of the Maintenance Association violated Texas law in that Alma did not allow members of the Association to vote or have a voice in the Maintenance Association" is, at worst, an unnecessary finding by the court. Under Texas law, this finding is certainly correct. See Tex. Prop. Code Ann. § 82.057(a) (West 2014). Appellant argues that the finding is moot because Alma had sold the property. Even if that is the case, the request for attorney fees related to the declaratory judgment action was not moot.

## REPLY TO APPELLANT'S ISSUE 3

Whether the trial court erred by awarding prejudgment interest on the attorney fee award is an issue of first impression in the Thirteenth Court of Appeals. Neither the Texas Supreme Court nor this Court have specifically determined whether an award of prejudgment interest on attorney fees that have been paid to the date of judgment is proper.

Appellant complains in its third issue that prejudgment interest was improperly awarded because the attorney fees that had been paid up to the date of judgment are not damages. This is an issue of first impression in the Thirteenth Court of Appeals.

In *Cavnar v. Quality Control Parking Inc.*, 696 S.W.2d 549 (Tex. 1985), the Texas Supreme Court held that "a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365-day year) on damages *that have accrued by the time of judgment.*" (italics in original). Based on this holding, awards of prejudgment interest on attorney fee awards have been affirmed by appellate courts in this state. For example, the court in *Nova Cas. Co. v. Turner Construction Co.*, 335 S.W.3d 698, 706 (Tex. App. – Houston [14th Dist.] 2011, no pet.) held that prejudgment interest is allowed on awards of attorney fees where there is evidence that the fees have already been paid. This case was cited with approval by the Federal Southern District of Texas in *MMR Intern. Ltd. v. Waller Marine, Inc.*, CIV.A. H-11-1188, 2013 WL 6491186, at *12 (S.D. Tex. Dec. 10, 2013) when applying Texas law to award prejudgment interest on the attorney fees

38

that had been paid before the entry of judgment. Similarly, the court of appeals in *Williams v. Colthurst*, 253 S.W.3d 353, 362 (Tex. App. – Eastland 2008, no pet) found that the trial court had not erred in awarding prejudgment interest on the attorney fees that had been paid prior to the entry of judgment. And in *A.V.I, Inc. v. Heathington*, 842 S.W.2d 712 (Tex. App. – Amarillo 1992, writ denied), the court found that the award of prejudgment interest on the attorney fees paid by the time of judgment was "entirely proper." *See also Marrs & Smith P'ship. v. D.K. Boyd Oil & Gas Co., Inc.*, 223 S.W.3d 1, 25-26 (Tex. App. – El Paso 2005, pet. denied) (recognizing that prejudgment interest on attorney fees paid at the time of judgment is recoverable and therefore, limiting the award accordingly).

The circumstances underlying the award of prejudgment interest to Bahia Mar mirror those in the foregoing cases. Bahia Mar had paid its attorney fees and provided evidence of those statements at the trial. (3 RR 85-90.) The judgment reflected prejudgment interest only on the attorney fees that had been paid up to the date of judgment. (2d Supp. CR 4.) Based on the weight of authority,[10] the trial court did not err in awarding prejudgment interest on Bahia Mar's "damages" – attorney fees that had been paid up to the time of trial.

---

[10] The only Texas Court of Appeals that has denied prejudgment interest on attorney fees where the fees were paid before trial is the Fifth Court of Appeals. *See Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 688 (Tex. App. – Dallas, 2008, no pet.)

Appellant argues that this Court should reverse the attorney fee award and affirm its holding in *Berry Property Management Inc. v. Bliskey,* 850 S.W.2d 644 (Tex. App. – Corpus Christ 1993, writ dism'd by agr.); however, the facts of that case are distinguishable from those here. That case involved an award of prejudgment interest for attorney fees that *had not been paid* prior to judgment. Thus*, Berry Property Management Inc.* did not address the situation at hand.

Nor has the Texas Supreme Court directly addressed the issue. In *In re Nalle Family Limited Partnership,* 406 S.W.3d 168 (Tex. 2013), a case relied on by Appellant, the Court held that attorney fees were neither compensatory damages nor costs for purposes of suspending enforcement of a money judgment under Texas Civil Practice & Remedies Code § 52.006. *Id.* at 176. Although it did not specifically address the issue of prejudgment interest, the Court stated that attorney fees are not "damages." *Id*. at 173. Consequently, how *In re Nalle Family Limited Partnership*, *Cavner*, *Berry Property Management Inc.*, and case law from the appellate courts in Texas affirming awards of prejudgment interest on attorney fees that had been paid up to the time of trial should apply here is an issue for this Court to decide. Appellant notes that the cases awarding prejudgment interest on attorney fees were decided before the Supreme Court held that attorney fees are not damages in a different context. However, since the issue has not been decided in

the Corpus Christi court of appeals, Appellee leaves this issue of first impression in this court's capable hands.

## CONCLUSION

The law and the record demonstrate that the trial court did not abuse its discretion in ordering the death penalty sanctions against Appellant. Appellant's violation of three court orders not only hindered the discovery process, but it also prevented Bahia Mar from obtaining evidence essential to its case and caused significant delays in the proceedings. Most importantly, it also demonstrated Appellant's flagrant disregard for the Texas Rules of Civil Procedure and for the authority of the trial court for a period of over 3 years. The record shows that the sanction was directly related to Appellant's wrongful conduct, that it was not excessive because lesser sanctions were considered and ordered, and that Appellant's conduct warranted a presumption that its defenses lacked merit. Consequently, the trial court's imposition of death penalty sanctions and award of attorney fees was not error.

## PRAYER

For the reasons stated herein, Appellee, Bahia Mar Co-Owner's Association, asks the Court to overrule Appellant, Alma Investments Inc.'s issues and that it affirm the judgment of the 197th Judicial District Court of Cameron County, and grant any other relief to which it may show itself justly entitled.

41

Respectfully submitted,


By:       /s/ Lance A. Kirby
        LANCE A. KIRBY
        State Bar No. 00794096
        lakirby@jgkl.com
        PAOLA R. GUERRERO
        State Bar No. 24038929
        pguerrero@jgkl.com
        JONES, GALLIGAN, KEY & LOZANO, L.L.P.
        Town Center Tower, Suite 300
        2300 West Pike Boulevard
        Post Office Drawer 1247 (78599-1247)
        Weslaco, Texas 78596
        Telephone: (956) 968-5402
        Telecopier: (956) 969-9402

        COUNSEL FOR APPELLEE
        BAHIA MAR CO-OWNERS
           ASSOCIATION, INC.

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), I certify that this document was produced on a computer using Microsoft Word 2010 and contains approximately 10,208 words as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).


        /s/ Lance A. Kirby
        LANCE A. KIRBY

## CERTIFICATE OF SERVICE

As required by Texas Rules of Appellate Procedure 6.3 and 9.5(b), (d), (e), I hereby certify that I have served the foregoing instrument on all parties – which are listed below – on this 15th day of May, 2015, in the manner indicated:

Dorian E. Ramirez, Clerk  VIA ELECTRONIC FILING
Thirteenth Court of Appeals
Administration Building
100 E. Cano, 5th Floor
Edinburg, Texas 78539

Richard B. Phillips, Jr.  VIA ELECTRONIC SERVICE
THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  (214) 969-1700
Telecopier:  (214) 969-1751
rich.phillips@tklaw.com

/s/ Lance A. Kirby
LANCE A. KIRBY

TAB

1

## COMMERCIAL CONTRACT - IMPROVED PROPERTY
## BAHIA MAR HOTEL RESORT & CONFERENCE CENTER

This Commercial Contract for Improved Property ("Agreement") is made effective this 20th day of November, 2009 ("Effective Date").

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

   **Seller: MSP Partners Realty, LLC.** (formerly known as Alma Investments, Inc.)
   Address: mpakideh@klasmanagement.com;
   Phone: (248) 203-2128          Fax: (248) 203-2448
   klandau@klasmanagement.com

   **Buyer: New Bahia Mar Development, LLC**
   Address: 3505 Boca Chica, Suite 11, Brownsville, Texas 78521
   Phone: (956) 546-3731         Fax: (956) 546-3765
   dsanchez@swiz.com

2. **PROPERTY:**

   A. "Property" means that real property, and all improvements, equipment and personal property located thereon, situated in South Padre Island, Cameron County, Texas at 6300 Padre Boulevard, South Padre Island, Cameron County, Texas and that is legally described on the attached **Exhibit A** and the survey of the Property is attached hereto as **Exhibit B**.

   B. Seller will sell and convey the Property together with
      (1) all buildings, improvements, and fixtures;
      (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
      (3) Seller's interest in all leases, rents, time share contracts, and security deposits for all or part of the Property;
      (4) Seller's interest in all licenses and permits related to the Property;
      (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
      (6) Seller's Developer Rights and interest in any potion of the Property including all maintenance agreements, management agreements in connection with the Property (including all of Sellers interest in any Bahia Mar Maintenance Association and other corporate entity which provides maintenance or managerial services to any portion of the Property (hereafter the "Development Rights"); and
      (7) all Seller's tangible personal property, if any, located on the Property that is used in connection with the Property's operations.

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

   Cash payable by Buyer at closing (Ten Million and no/100 Dollars)...............................$ 10,000,000.00

4. **Intentionally Left Blank.**

5. **EARNEST MONEY:**

   A. Contemporaneous with the execution of this Agreement by both Parties, Buyer will deposit as earnest money, two

Page 1

*DMS*

ALMA POST_000013

## Commercial Contract for 6300 Padre Boulevard, South Padre Island, Texas

hundred fifty.thousand ($250,000.00) dollars in the form of either a money order, bank check or cashier's check where funds are immediately available ("Earnest Money" or Earnest Money Deposit") with Stewart Title of Cameron County at 700 FM 802, Bldg. A, Brownsville, Texas (the "Escrow Agent"). Buyer will deposit an additional Two Hundred Fifty Thousand Dollars ($250,000.00) on or before November 24, 2009. The title company is the Escrow Agent under this contract.

B. If Buyer fails to timely deposit the Earnest Money, Seller may terminate this contract by providing written notice to Buyer before Buyer deposits the Earnest Money and this contract will immediately become null and void with no rights or obligations accruing to any party.

C. Buyer may instruct the Escrow Agent to deposit the Earnest Money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

### 6. TITLE POLICY, SURVEY, AND UCC SEARCH:

A. Title Policy:

   (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by the title company in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
   (a) those title exceptions permitted by this contract or as may be approved or waived by Buyer in writing; and
   (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

   (2) Any endorsements to the title policy requested by Buyer shall be paid by Buyer.

   (3) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements will not be amended to read "shortages in areas".

   (4) Buyer may object to any restrictive covenants on the Property within the time required under Paragraph 6D.

   (5) Seller has furnished Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

B. Survey:

   (1) Buyer acknowledges that Seller provided the requested survey to Buyer prior to the execution of this Purchase Agreement and that no additional information is required hereunder

C. UCC Search:

   (1) Seller represents that to its knowledge no UCC liens have been placed on any product presently located at the Property, but however, if such UCC lien(s) do exist, Seller will pay for said liens out of the proceeds from the sale.

D. Buyer's Objections to the Commitment:

   (1) Within five (5) calendar days after Buyer receives the commitment, copies of the documents evidencing title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if the matters disclosed constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing

Page 2



# Commercial Contract for 6300 Padre Boulevard, South Padre Island, Texas

or Buyer will assume at closing.

(2) Seller shall cure Buyer's timely objections on or before the Closing after Seller receives the objections. The Closing Date, as hereafter defined, will be extended day to day, as necessary, until the objections are cured. If Seller fails to cure the objections by the time required, Buyer may either (i) terminate this contract by providing written notice to Seller or (ii) waive the objections and proceed to Closing. If Buyer elects to terminate, Buyer may elect to either (i) receive a refund of the earnest money and this contract will be terminated with no further obligation or liability of any party hereto, or (ii) pursue his remedies pursuant to the provisions of Paragraph 15.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object, except that Buyer will not waive the requirements in Schedule C of the commitment.

## 7. PROPERTY CONDITION:

A. <u>Present Condition</u>: **Buyer accepts the physical condition of the Property in its present "as-is" condition.**

B. <u>Warranties and Inspections</u>:

(1) <u>Property Information</u>: Seller warrants that as a condition precedent to Closing it will deliver within 5 business days to Buyer the following items:

   (a) all books, minutes and records related to the Council of Co-Owners for Bahia Grande and Regime #5 as well as Bahia Mar Maintenance Association, which reflect the identity, address, status of the accounts and all other pertinent information related to each owner (including the accounts attributable to Seller) within such regimes and certified by Seller as true and correct. Seller warrants that an accurate list of such accounts shall be attached as **Exhibit C** to this is Contract.
   (b) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;
   (c) copies of all current warranties and guaranties relating to all or part of the Property;
   (d) copies of all repair contracts/invoices for work performed or equipment purchased for the Property or its improvements within the last eighteen months (including any purchases of systems or equipment);
   (e) an accounting of all insurance proceeds received by the Council of Co-Owners for Bahia Grande and Regime #5 since July 1, 2008 evidencing the type and amount of insurance claims made for Bahia Grande, Regime # 5 and any other portions of the Property, the amounts of insurance monies received, the status of any unpaid claims and the use and expenditure of all insurance monies received. Seller warrants that an accurate accounting of such accounts shall be attached as **Exhibit D** to this is Contract.

(2) <u>Inspections, Studies, or Assessments</u>:

   (a) Immediately after the Effective Date, Buyer, at Buyer's expense, may complete or cause to be completed inspections, studies, or assessments of the Property, including all improvements and fixtures. Inspections, studies, or assessments may include, but are not limited to:
   
   (i) physical property inspections (for example, structural pest control, mechanical, structural, electrical, and plumbing inspections);
   (ii) economic feasibility studies;
   (iii) environmental assessments (for example, soil tests, air sampling, and paint sampling);
   (iv) engineering studies; and
   (v) compliance inspections (for example, compliance determination with zoning ordinances, restrictions, building codes, and statutes).

   (b) Buyer must
   (i) employ only trained and qualified inspectors and assessors;

Page 3



**ALMA POST_000015**

(ii) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
(iii) abide by any reasonable entry rules or requirements that Seller may require;
(iv) not interfere with existing operations or occupants of the Property; and
(v) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(c) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

(3) Delivery of Title To Escrow Agent: Within ten (10) business days after the Effective Date, Seller will execute and deliver to the Escrow Agent, at Seller's expense, a general warranty deed (or general warranty deeds as provided in Paragraph 22 G herein) (the "Deeds") for all fee units being acquired and a Transfer, Assignment and Conveyance (the "Transfers") for all leasehold units being conveyed in compliance with the provisions of Paragraphs 9B and 22G. The Deeds and Transfers must convey good and indefeasible title to the Property, must cure all of the objections and conditions identified Schedule C of the Owner's commitment of title policy, and must show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. The general warranty deed(s) will be held by the Escrow Agent until the Closing Date.

(4) Contract Affecting Operations: Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyers prior written approval.

**8. BROKERS:** Seller is not being represented by any broker in this sale and shall not therefore be responsible for any sales commission.

**9. CLOSING:**

A. The closing of the sale will be on or before December 14, 2009 (the "Closing Date"), unless the parties mutually agree to an extension in writing at least seven (7) calendar days prior to the Closing Date. If either party fails to close by the Closing Date, the non-defaulting party may exercise the remedies in Paragraph 15.

B. At closing, the Escrow Agent will deliver to Buyer the general warranty deed(s). The deed(s) must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property at closing:
(1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, and
(2) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract,

C. At closing, Seller, at Seller's expense, will also deliver to Buyer or its designee:
(1) tax statements showing no delinquent taxes on the Property;
(2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
(3) an assignment of all leases and timeshare contracts to or on the Property as well as an assignment of Seller's Development Rights in the Property;
(4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
(a) construction permits, if any;
(b) maintenance, management, and other contracts; and
(c) warranties and guaranties;
(6) evidence that the person executing this contract is legally capable and authorized to bind Seller; and



DMS

    (7) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary;

    (8) fully executed Condominium Resale Certificates (TREC Form 32-2) relating to all fee and leasehold units being transferred to Buyer.

D. At closing, Buyer will:

    (1) pay the sales price in good funds acceptable to the escrow agent;

    (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;

    (3) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

E. The closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

**10. POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition, ordinary wear and tear excepted. Until closing, Seller will operate the Property in the same manner as on the Effective Date and will not transfer or dispose of any of the personal property described in Paragraph 2. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

**11. SPECIAL PROVISIONS:**

A. As a condition precedent to closing, Seller will provide an undertaking and indemnity agreement, satisfactory to Buyer's counsel, wherein Seller will agree to warrant and indemnify that neither (i) the litigation in which Seller is currently involved nor (ii) Seller's previous role in handling any of the matters arising from all insurance matters and insurance claims relating to Bahia Grande, Regime #5 (and their Council of Co-owners Associations), the Bahia Mar Maintenance Association or the Bahia Mar Co-Owners Association, Inc. will be or become a liability (contingent or otherwise) of Buyer or the Property. Seller therefore agrees to indemnify save and hold harmless Buyer from any and all liability, damages, costs, expenses and judgments accruing to or against Buyer or the Property as a result of (i) the litigation in which Seller is currently involved nor (ii) Seller's role in providing management or administration of the insurance proceeds to any of the Council of Co-Owners Associations related to the Property, including Bahia Grande, Regime #5 (and their Council of Co-owners Associations), the Bahia Mar Maintenance Association or the Bahia Mar Co-Owners Association, Inc.. This Paragraph 11 shall survive closing or termination of this contract.

B. As a condition precedent to closing and prior to Closing, Seller will schedule a meeting of the owners and directors of the Units within the Bahia Grande and the Regime #5 Homeowners Regimes. Prior to such meeting, Seller shall have made full disclosure to the Owners within those regimes of the accounting of all insurance proceeds received by Seller and/or the Council of Co-Owners for Bahia Grande and Regime #5 since July 1, 2008 evidencing the amount and type of insurance claims made, the amount of insurance monies received, the status of any unpaid claims and the use of all insurance monies received. It is understood that at such special owners and directors meeting, Seller shall obtain an approval from a majority of the Owners (not including the units or leasehold interests owned by Seller) and approval from the respective Council of Co-Owners Associations for Bahia Grande and Regime #5 their agreement to (i) the release of Buyer from any claims, suits or responsibility related to the monies received or to be derived from any insurance claims made related to the Property and (ii) their acknowledgement that a special assessment will be made to rebuild the improvements of those Regimes and that such assessment will exceed the amounts which those owners may receive from any insurance claims. Seller further warrants that any monies due to the remaining owners from the insurance proceeds will be paid at Closing from the Consideration received from Buyer into an escrow account at the Title Company for their benefit and the closing agent is hereby instructed to deposit such monies into the escrow account.

**12. SALES EXPENSES:**

A. <u>Seller's Expenses:</u> Seller will pay for the following at or before closing:

Page 5

*DMS*

ALMA POST_000017

(1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;

(2) release of Seller's loan liability, if applicable;

(3) tax statements or certificates;

(4) preparation of the deeds and any bill of sale;

(5) one half of the costs to record any documents to cure title objections that Seller must cure;

(6) other expenses that Seller will pay under other provisions of this contract, including the escrow amount referred to in **Paragraph 11 B** above as well as Sellers portion of any outstanding accounts attributable to Seller as reflected in **Exhibit C and Exhibit D.**

B. Buyer's Expenses: Buyer will pay for the following at or before closing:

(1) all loan expenses (for example, application fees, origination fees, discount fees, buy-down fees, commitment fees, appraisal fees, assumption fees, recording fees, tax service fees, mortgagee title policy expenses, credit report fees, document preparation fees, interest expense that Buyer's lender requires Buyer to pay at closing, loan related inspection fees, amortization schedule fees, courier fees, underwriting fees, wire transfer fees, and other fees required by Buyer's lender);

(2) preparation fees of any deed of trust;

(3) recording fees for the deed and any deed of trust;

(4) premiums for flood and hazard insurance as may be required by Buyer's lender;

(5) full escrow fee;

(6) copy and delivery fees for delivery of the title commitment and related documents;

(7) other expenses that Buyer will pay under other provisions of this contract; and

(8) costs to record any documents to cure title objections.

## 13. PRORATIONS:

A. Prorations:

(1) Ad valorem taxes will be prorated thru the Closing Date. If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 13A(1) survives closing.

**14. CASUALTY LOSS AND CONDEMNATION:** If before Closing, condemnation proceedings are commenced against any part of the Property, Buyer may appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to Seller and the sales price will be reduced by the same amount;

## 15. DEFAULT:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller may:

(1) terminate this contract and receive the Earnest Money as liquidated damages, thereby releasing the parties from this contract; or

(2) enforce specific performance caused by Buyer's failure to comply together with any delay damages (not to exceed $500,000.00) suffered by Seller as a result of Buyer's refusal to timely close.

(3) This is the only recovery eligible to Seller, all other remedies, warranties and guarantees to Seller have been waived.

B. If Seller fails to comply with this contract, Seller is in default and Buyer may:

(1) terminate this contract and receive the return of the Earnest Money and the amount of $500,000.00 as liquidated damages from Seller, thereby releasing the parties from this contract; or

(2) enforce specific performance caused by Seller's failure to comply together with any delay damages (not to exceed $500,000.00) suffered by Buyer as a result of Seller's refusal to timely close.

Page 6

ALMA POST_000018

      (3) This is the only recovery eligible to Buyer, all other remedies, warranties and guarantees to Buyer have been waived.

    C. In any legal action brought pursuant to subsections A or B above, each party will pay and bear its respective legal expenses.

**16. ATTORNEY'S FEES:** If Buyer, Seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 16 survives termination of this contract.

**17. ESCROW:**

    A. At closing, the Earnest Money will be applied and credited to the Purchase Price.

    B. If both parties make written demand for the Earnest Money, Escrow Agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of Escrow Agent from all parties.

    C. If one party makes written demand for the Earnest Money, Escrow Agent will give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 30 days after the date escrow agent sent the demand to the other party, escrow agent may disburse the Earnest Money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the Earnest Money and escrow agent may pay the same to the creditors.

    D. If Escrow Agent complies with this Paragraph 17, each party hereby releases Escrow Agent from all claims related to the disbursal of the Earnest Money.

    E. Notices under this Paragraph 17 must be sent by certified mail, return receipt requested. Notices to Escrow Agent are effective upon receipt by escrow agent.

**18. CONFIDENTIALITY:** The terms and conditions of this Agreement shall remain confidential and survive Closing.

**19. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to the parties' addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

**20. FEDERAL TAX REQUIREMENT:** If Seller is a "foreign person" as defined by applicable law, or if Seller fails to deliver at closing an affidavit that Seller is not a foreign person, then Buyer will withhold from the sales proceeds at closing an amount sufficient to comply with applicable tax law and deliver the amount withheld to the Internal Revenue Service (IRS), together with appropriate tax forms. IRS regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. Intentionally left blank.**

**22. AGREEMENT OF THE PARTIES:**

A.     This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns.

B.     This contract is to be construed in accordance with the laws of the State of Texas.

Page 7

ALMA POST_000019

Commercial Contract for 6300 Padre Boulevard, South Padre Island, Texas

C.   This Agreement embodies the entire agreement between the parties with regard to the subject matter hereof and supersedes all prior written or oral agreements or contemporaneous discussions, negotiations, correspondence or other understandings. No changes or additions to this Agreement may be enforced without written approval of both parties hereto.

D.   Any portion of this Agreement that is declared contrary to any law, regulation, or is otherwise invalid, shall be deemed stricken without impairing the validity of the remainder of such.

E.   If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

F.   Any failure by either party, at any time, to enforce or require the other party's compliance with any of the terms and conditions of this Agreement shall not constitute a waiver of such terms and conditions, nor limit the right of the non-defaulting party to avail itself of any and all remedies it may have. The remedies provided for in this Agreement shall be cumulative with all other remedies at law or in equity.

G.   Buyer may assign this contract, provided that Seller agrees to such assignment in writing and none of the terms herein including the Closing Date have been modified without Seller's prior written consent, which may be withheld in its sole discretion. Notwithstanding the foregoing, Buyer shall have the absolute right (i) to designate which various component portions of the Property may be transferred to entities affiliated with Buyer and (ii) to apportion the Sales Price among the various components of the Property and (iii) to require that the various component parcels and their respective apportionments shall be reflected on separate HUD Closing Settlement Statements.

H.   Addenda which are part of this contract are the Property Description Exhibit attached hereto as Exhibits A, B, C and D.

23. TIME: Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday. If this contract is snot signed and accepted by both parties before 1:00 p.m. on Friday, November 20, 2009, this contract shall become null and void and without any further force or effect.

Buyer: NEW BAHIA MAR DEVELOPMENT, LLC.

By: _____

Printed Name: DENNIS SANCHEZ

Title: Manager

Seller: MSP PARTNERS REALTY, LLC.

By: _____

Printed Name: MARTIN PAKIDEH

Title: Manager/President

Page 8

ALMA POST_000020

Commercial Contract for 6300 Padre Boulevard, South Padre Island, Texas

---

**ESCROW RECEIPT**

Escrow agent acknowledges receipt of:

☐ A.the contract on this day _____ ;

☐ B. earnest money in the amount of two hundred fifty thousand dollars ($ 250,000.00) in the form of

on _____.

Escrow Agent: _____ Address: _____

By: _____ Fax: _____

---

Page 9



# EXHIBIT A

The real property and all improvements included in this contract consist of all real property, all condominium units, all leasehold estates and all time share interests owned or held by Seller and its affiliated companies related to the Property and include, but are not limited to, the real property descriptions contained in the following pages.

Page 10

ALMA POST_000022



# A. Settlement Statement (HUD-1)

**B. Type of Loan**

| 1. ☐ FHA    2. ☐ RHS    3. ☐ Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|
| 4. ☐ VA    5. ☐ Conv. Ins. | Stewart GF#2908080 | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| Bahia Mar Tower, LLC | Investement Protection Exchange Services, LLC f/b/o MSP Partners Realty, LLC | |
| 3505 Boca Chica Blvd., Suite 100 | 4265 San Felipe Street, Suite 1100 | |
| Brownsville (Cameron Co), Texas 78521 | Houston (Harris Co), Texas 77027 | |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date:    12/16/09 |
|---|---|---|
| Bahia Grande Condominiums (the "Tower") at 6300 | C. Frank Wood, PC | Place of Settlement: |
| Padre Blvd., South Padre Island, Cameron County, | File No. 25152 | 3505 Boca Chica Blvd., Suite 100 |
| Texas | | Brownsville (Cameron Co), Texas 78521 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | $5,800,000.00 | 401. Contract sales price | $5,800,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | $105,333.48 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes    12/16/09  to   12/31/09 | $767.50 | 406. City/town taxes    12/16/09  to   12/31/09 | $767.50 |
| 107. County taxes    12/16/09   to   12/31/09 | $328.35 | 407. County taxes    12/16/09  to   12/31/09 | $328.35 |
| 108. School taxes    12/16/09   to   12/31/09 | $1,419.24 | 408. School taxes    12/16/09  to   12/31/09 | $1,419.24 |
| 109. Laguna Madre    12/16/09   to   12/31/09 | $106.82 | 409. Laguna Madre    12/16/09  to   12/31/09 | $106.82 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| **120. Gross Amount Due from Borrower** | $5,907,955.39 | **420. Gross Amount Due to Seller** | $5,802,621.91 |
| **200. Amounts Paid by or in Behalf of Borrower:** | | **500. Reductions In Amount Due to Seller:** | |
| 201. Deposits or earnest money with Stewart Title | $290,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $87,355.64 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff Mechanic's Lien North Star Electric, LLC | $21,589.00 |
| 205. | | 505. Payoff Mechanic's Lien Fox Mechanical, LLC | $10,850.00 |
| 206. | | 506. Payoff Mayflower Transit, LLC | $15,597.65 |
| 207. | | 507. Escrow Payoff Mechanic's Lien CC Pan, LLC | $140,326.55 |
| 208. | | 508. Payoff Lance Christopher Kassab, PC | $8,677.41 |
| 209. | | 509. Bahia Grande Escrow | $500,000.00 |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes         to | $0.00 | 510. City/town taxes         to | $0.00 |
| 211. County taxes         to | $0.00 | 511. County taxes         to | $0.00 |
| 212. Assessments         to | $0.00 | 512. Assessments         to | $0.00 |
| 213.         to | $0.00 | 513.         to | $0.00 |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $290,000.00 | **520. Total Reduction Amount Due Seller** | $784,396.25 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $5,907,955.39 | 601. Gross amount due to seller (line 420) | $5,802,621.91 |
| 302. Less amounts paid by/for borrower (line 220) | $290,000.00 | 602. Less reductions in amount due seller (line 520) | $784,396.25 |
| 303. Cash  [X] from   ☐ to Borrower | $5,617,955.39 | 603. Cash  [X] to   ☐ from Seller | $5,018,225.66 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

ALMA POST_000001



OMB Approval No. 2502-0265

# A. Settlement Statement (HUD-1)

## B. Type of Loan

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | Stewart GF#2809060 | IBC# | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| New Bahia Mar Development, LLC<br><br>3505 Boca Chica Blvd., Suite 100<br>Brownsville (Cameron Co), Texas 78521 | Investment Protection Exchange Services, LLC f/b/o MSP Partners Realty, LLC<br><br>4265 San Felipe Street, Suite 1100<br>Houston (Harris Co), Texas 77027 | International Bank of Commerce<br><br>1600 FM 802<br>Brownsville (Cameron Co), Texas 78521 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: 12/16/09 |
|---|---|---|
| Condos in Condominium Regimes 1-5, at 6300<br>Padre Blvd., South Padre Island, Cameron County,<br>Texas | C. Frank Wood, PC<br>File No. 25152 | Place of Settlement:<br>3505 Boca Chica Blvd., Suite 100<br>Brownsville (Cameron Co), Texas 78521 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | $4,200,000.00 | 401. Contract sales price | $4,200,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | $305,866.18 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes 12/16/09 to 12/31/09 | $1,085.75 | 406. City/town taxes 12/16/09 to 12/31/09 | $1,085.75 |
| 107. County taxes 12/16/09 to 12/31/09 | $790.55 | 407. County taxes 12/16/09 to 12/31/09 | $790.55 |
| 108. School taxes 12/16/09 to 12/31/09 | $3,720.30 | 408. School taxes 12/16/09 to 12/31/09 | $3,720.30 |
| 109. Laguna Madre 12/16/09 to 12/31/09 | $326.84 | 409. Laguna Madre 12/16/09 to 12/31/09 | $326.84 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| **120. Gross Amount Due from Borrower** | $4,511,789.62 | **420. Gross Amount Due to Seller** | $4,205,923.44 |
| **200. Amounts Paid by or In Behalf of Borrower:** | | **500. Reductions In Amount Due to Seller:** | |
| 201. Deposits or earnest money with Stewart Title | $210,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) from IBC | $5,000,000.00 | 502. Settlement charges to seller (line 1400) | $170,668.58 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of 1st mortgage loan to IBC (1010510673) | $223,069.20 |
| 205. | | 505. Payoff of 2nd mortgage loan to IBC | $0.00 |
| 206. | | 506. Payoff of Texas State Tax Lien (Comptroller) | $31,631.20 |
| 207. | | 507. Payoff of Mechanic's Lien to Dos Hermanos | $24,495.17 |
| 208. | | 508. Payoff of Mechanic's Lien to El Clavo | $0.00 |
| 209. | | 509. Bahia Grande Escrow | $100,000.00 |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes to | $0.00 | 510. City/town taxes to | $0.00 |
| 211. County taxes to | $0.00 | 511. County taxes to | $0.00 |
| 212. Assessments to | $0.00 | 512. Assessments to | $0.00 |
| 213. to | $0.00 | 513. to | $0.00 |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $5,210,000.00 | **520. Total Reduction Amount Due Seller** | $549,764.15 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $4,511,789.62 | 601. Gross amount due to seller (line 420) | $4,205,923.44 |
| 302. Less amounts paid by/for borrower (line 220) | $5,210,000.00 | 602. Less reductions in amount due seller (line 520) | $549,764.15 |
| 303. Cash ☐ from ☒ to Borrower | ($698,210.38) | 603. Cash ☒ to ☐ from Seller | $3,656,159.29 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

ALMA POST_000005

TAB
2

CAUSE NO. 2006-07-3289-C

| | | |
|---|---|---|
| BAHIA MAR CO-OWNERS ASSOCIATION, INC. | § § § § | IN THE DISTRICT COURT |
| VS. | § § | 197th JUDICIAL DISTRICT |
| BAHIA MAR MAINTENANCE ASSOCIATION, ALMA INVESTMENTS, INC. d/b/a TEXAS ALMA INVESTMENTS, INC. | § § § § | CAMERON COUNTY, |

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

After considering plaintiff, Bahia Mar Co-Owners Association, Inc.'s motion to compel, Alma Investments, Inc.'s motion for reconsideration, the response, and arguments of counsel, the court

GRANTS plaintiff's motion to compel in part and ORDERS Alma Investments, Inc. d/b/a Texas Alma Investments, Inc. to:

- Deposit $10,000.00 into the registry of the court by April 30, 2010 in relation to the audit;

The Court FURTHER ORDERS Alma Investments, Inc. and Bahia Mar Maintenance Association to:

- Produce to Moises Gomez all books and records for the period from 2004 through 2008 for Bahia Mar Maintenance Association, including but not limited to the original bank statements, cancelled checks, invoices supporting payment of expenditures, receipts for payment of association dues and any other records needed to audit Bahia Mar Maintenance Association by April 30, 2010. To the extent that any books and records related to Alma Investments, Inc. are needed to conduct the audit, such information shall also be produced.

SIGNED on _April 1_, 2010.

PRESIDING JUDGE

FILED __/8 30__ O'CLOCK ___ M
AURORA DE LA GARZA, CLERK

APR 05 2010

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

Copies to: APR 05 2010
Lance A. Kirby, Post Office Drawer 1247, Weslaco, Texas 78599; Fax (956) 969-9402
Richard Valdez, Esquire, 316 West Tyler, Harlingen, Texas 78550; Fax (956) 425-6565
Nathan Barrow, 802 N. Carancahua, Suite 1300, Corpus Christi, Texas 78470; Fax (361) 884-7261
Dennis Sanchez, 3505 Boca Chica Blvd., Ste. 100, Brownsville, Texas 78521-4064; Fax # (956) 546-3766

271

TAB
3

CAUSE NO. 2006-07-3269-C

| | | |
|---|---|---|
| BAHIA MAR CO-OWNERS ASSOCIATION, INC. | § § § § | IN THE DISTRICT COURT |
| vs. | § § | 197th JUDICIAL DISTRICT |
| BAHIA MAR MAINTENANCE ASSOCIATION, ALMA INVESTMENTS, INC. d/b/a TEXAS ALMA INVESTMENTS, INC. | § § § § | CAMERON COUNTY, |

---

## ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION FOR AUDIT

---

After considering plaintiff, Bahia Mar Co-Owners Association, Inc.'s motion to enforce order granting plaintiff's motion for audit, the response, and arguments of counsel, the court

GRANTS plaintiff's motion in part as follows:

IT IS THEREFORE ORDERED, ADJUGED AND DECREED, that the financial books and records of Bahia Mar Maintenance Association be audited by Moises Gomez, who will conduct an audit for the calendar year _2005_. To the extent necessary, the auditor is authorized to review records of Alma Investments, Inc. if needed in the auditing process.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Alma Investments, Inc. d/b/a Texas Alma Investments, Inc. shall pay the named independent auditor for performing the audit of financial records. Alma shall deposit $20,000.00 with the registry of the court by no later than July 16, 2012 at the close of business.

SIGNED on _April 11_, 2012.

_____
PRESIDING JUDGE

FILED _____ O'CLOCK _____ M
AURORA DE LA GARZA, CLERK

APR 11 2012

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

Copies to: APR 11 2012
Lance A. Kirby, Post Office Drawer 1247, Weslaco, Texas 78599; Fax (956) 969-9402
Kevin Landau, 38500 Woodward Ave., Ste. 200, Bloomfield, MI 48304; Fax (248) 203-2448
Hector J. Torres, 418 East Dove Ave., McAllen, Texas 78504; Fax (956) 630-0189
Louis S. Sorola _ 1999 W. Jefferson St. - Brownsville, Tx. 78520

29

TAB

4

CAUSE NO. 2006-07-003289-C

| | |
|---|---|
| BAHIA MAR CO-OWNERS ASSOCIATION, INC. <br> Plaintiff, <br> **Alma Investments, Inc. dba Texas Alma Investments** <br> vs. | IN THE DISTRICT <br><br> 197th JUDICIAL DISTRICT |
| BAHIA MAR MAINTENANCE TEXAS ASSOCIATION, ALMA INVESTMENTS, INC. d/b/a TEXAS ALMA INVESTMENTS, et. al <br> Defendants. | CAMERON COUNTY, |

## ORDER GRANTING ALTERNATIVE VENUE AND METHOD OF DEPOSITIONS

After considering the Defendants', Alma Investments and Bahia Mar Maintenance Association, objections to the Plaintiff's Motion for Continuance of the Summary Judgment Submission Date, the pleadings, response and arguments of counsel;

IT IS THEREFORE ORDERED AND ADJUDGED that the parties shall cooperate in finding a mutually agreeable, alternative venue for the taking of depositions for the defendants', their agents, consultants or employs and that such depositions shall be taken in the place of each deponents residency, or, via telephone, or, video conferencing technology acceptable to the Court.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendants' costs, expenses and attorney fees, for having to oppose the Plaintiffs' untimely Motion for a continuance, shall be taken under advisement by the Court for a period not to exceed 90 days from the date hereof.

IT IS FURTHER OPRDERED AND ADJUDGED that the parties shall, in a timely manner, not to exceed Sixty (60) days from the date hereof, use all reasonable prudence and cooperation in completing the following three (3) depositions of the Defendants, as named by Plaintiff's counsel on the record; (a) Khalil Pakideh; (b) Martin Pakideh and (c) Alma's corporate representative previously deposed.

NOW, THEREFORE, IT IS ORDERED AND ADJUDGED that the Defendant's Summary Judgment Submission Date shall be extended until March 9, 2012, or sooner, provided, that, no unforeseen circumstances arise such as a natural disaster, thereby preventing such submission from occurring.

SIGNED on _December 6_, 2011.

12/07/11 COPIES TO:

HON. LANCE A. KIRBY
HON. DENNIS SANCHEZ
HON. KEVIN LANDAU
HON. ROBERT L. GUERRA

_____
JUDGE PRESIDING

FILED _5:17_ O'CLOCK ____M
AURORA DE LA GARZA, CLERK

DEC 06 2011

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

27

TAB
5

CAUSE NO. 2006-07-3269-C

| | | |
|---|---|---|
| BAHIA MAR CO-OWNERS ASSOCIATION, INC. | § § § § | IN THE DISTRICT COURT |
| VS. | § § | 197th JUDICIAL DISTRICT |
| BAHIA MAR MAINTENANCE ASSOCIATION, ALMA INVESTMENTS, INC. d/b/a TEXAS ALMA INVESTMENTS, INC. | § § § § | CAMERON COUNTY, |

## ORDER

On August 23, 2012 a status hearing was held.

After considering the arguments of counsel, the court hereby

ORDERS Kahil Pakideh and Martin Pakideh to appear for deposition at the law offices of Jones, Galligan, Key & Lozano, L.L.P., 2300 West Pike Blvd, Suite 300, Weslaco, Texas 78596, (956) 968-5402 on September 28, 2012 at 9:00 a.m., unless agreed otherwise.

The court FURTHER sets Defendants' motion for summary judgment for submission (no hearing will be held) before the 197th Judicial District Court, on November 19, 2012 at 9:00 a.m. and orders Plaintiff to file their response by November 9, 2012.

SIGNED on _September 6_, 2012.

_____
PRESIDING JUDGE

FILED ___8___ O'CLOCK ___A___M
AURORA DE LA GARZA, CLERK

OCT 01 2012

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY



OCT 01 2012

Copies to:
Lance A. Kirby, Post Office Drawer 1247, Weslaco, Texas 78599; Fax (956) 969-9402
Hector J. Torres, 418 East Dove Ave., McAllen, Texas 78504; Fax (956) 630-0189
Louis S. Sorola, 1999 West Jefferson Street, Brownsville, Texas 78520; Fax (956) 544-7766
Alma Investments, Inc., 38500 Woodward Ave Suite 200, Bloomfield Hills, Michigan 48304; Fax (248) 671-0884

TERRY D. KEY
DENNIS SANCHEZ
BAHIA MAR MAINTENANCE ASSOCIATION

30

TAB

6

| | | |
|---|---|---|
| BAHIA MAR CO-OWNERS ASSOCIATION, INC. | § § § § | IN THE DISTRICT COURT |
| VS. | § § | 197th JUDICIAL DISTRICT |
| BAHIA MAR MAINTENANCE ASSOCIATION, ALMA INVESTMENTS, INC. d/b/a TEXAS ALMA INVESTMENTS, INC. | § § § § | CAMERON COUNTY, |

## ORDER

On December 13, 2012 a hearing was held on the following motions:

1. Defendant's Motion to Quash Plaintiff's Notice of Oral Deposition of Defendant's Kahil Pakideh (filed 10/25/12);

2. Defendant's Motion to Quash Plaintiff's Notice of Oral Deposition of Martin Pakideh (filed 10/25/12) and;

3. Motion to Quash Plaintiff's Notice of Oral Depositions of Defendant's Corporate Representative (filed 11/21/12);

After considering the arguments of counsel, along with the previous order requiring depositions to take place that is dated September 6, 2012, the court hereby

ORDERS Kahil Pakideh and Martin Pakideh to appear for depositions at the law offices of Jones, Galligan, Key & Lozano, L.L.P., 2300 West Pike Blvd, Suite 300, Weslaco, Texas 78596, (956) 968-5402 on January 25, 2013 at 9:00 a.m. and 1:00 p.m. respectively. Kahil Pakideh, Martin Pakideh and/or Alma Investments, Inc. will be responsible for Kahil and Martin Pakideh's transportation expenses to and from Weslaco.

The court FURTHER ORDERS that the deposition of Alma Investments, Inc.'s corporate representative(s) which is the subject of item 3 above will not take place until after March 1, 2013.

281

SIGNED on _December 18_, 20 _12_.

FILED _8:20_ O'CLOCK _A_ M
AURORA DE LA GARZA, CLERK

DEC 19 2012 ᶜ᾽DG

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

PRESIDING JUDGE

D.G. DEC 19 2012
Copies to:
Lance A. Kirby, Post Office Drawer 1247, Weslaco, Texas 78599; Fax (956) 969-9402
Hector J. Torres, 418 East Dove Ave., McAllen, Texas 78504; Fax (956) 630-0189
Louis S. Sorola, 1989 West Jefferson Street, Brownsville, Texas 78520; Fax (956) 544-7766
Dennis Sanchez, 3505 Boca Chica Blvd., Ste. 100, Brownsville, TX 78521; Fax # (956) 546-3765

282

TAB
7

FILED
2014-DCL-04099
6/23/2014 12:01:29 PM
Aurora De La Garza
Cameron County District Clerk
By Oralia White Deputy Clerk

CAUSE NO. 2014-DCL-04099

| | | |
|---|---|---|
| BAHIA MAR CO-OWNERS<br>ASSOCIATION, INC.<br>    Plaintiff, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| vs. | §<br>§ | |
| MSP PARTNERS REALTY, LLC, a Florida<br>Limited Liability Company,<br>MSP PARTNERS REALTY, LLC a Texas<br>Limited Liability Company,<br>Alma Investments, Inc.,<br>KHALIL PAKIDEH and<br>MARTIN S. PAKIDEH<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 197th JUDICIAL DISTRICT<br><br><br><br>CAMERON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION & REQUEST FOR DISCLOSURE

1.     Plaintiff seeks only monetary relief over $1,000,000.00, including damages of any kind, penalties, costs, expenses, prejudgment interest, and attorney fees. TRCP 47(c)(5).

### A. DISCOVERY CONTROL PLAN

2.     Plaintiff intends to conduct Level 3 discovery under Texas Rule of Civil Procedure 190.4.

### B. PARTIES

3.     Plaintiff, **Bahia Mar Co-Owners Association, Inc.**, is a corporation that is organized under the laws of the State of Texas.

4.     Defendant, **MSP Partners Realty, LLC,** a Florida limited liability company "MSP", is a corporation that is incorporated under the laws of the State of Florida. Defendant MSP was originally incorporated in Texas as MSP Partners Realty, LLC, a Texas Limited Liability Company ("MSP Texas"). In 2010, MSP Texas converted into

MSP and incorporated in Florida where it has its principal place of business. (See attached **Exhibit 1**) Defendant does not have a registered agent for service of process in the State of Texas. Service of process on defendant may be made according to the laws of the State of Texas by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.

5.      Defendant, **MSP Partners Realty, LLC** a Texas Limited Liability Company ("MSP Texas"), is a corporation that is incorporated under the laws of the State of Texas. Service of process on defendant may be made by serving its registered agent for service Corporate Creations Network Inc., at 4665 San Felipe #1100, Houston TX 77027. Defendant MSP Texas converted into MSP as noted above but is being sued herein out of an abundance of caution to make sure all necessary parties are brought before the court.

6.      Defendant, **Alma Investments, Inc.** ("Alma"), is a corporation that is incorporated under the laws of the State of Michigan. Service of process on defendant may be made by serving its registered agent for service Corporate Creations Network Inc., at 4665 San Felipe #1100, Houston TX 77027.

7.      Defendant, **Khalil Pakideh,** an individual who is a nonresident of Texas, whose address is 1250 Hollywood Dr., Monroe, MI 48161, may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant has engaged in business in Texas but has not designated or maintained a resident agent for service of process.

8.      Defendant, **Martin S. Pakideh,** an individual who is a nonresident of Texas, whose address is 3700 Telegraph, Ste. 1551, Bingham Farms, MI 48025, may

be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant has engaged in business in Texas but has not designated or maintained a resident agent for service of process.

## C. JURISDICTION

9.    This court has personal jurisdiction over all of the defendants because the Defendants committed an intentional tort of fraudulent transfer and received the proceeds and/or the benefit of the proceeds from the sale of Alma. This suit arises out of Alma's transfer and sale of real property located in Cameron County, Texas. Defendant MSP Texas is a Texas LLC. Alma should have received the proceeds from the sale of the Bahia Mar resort since Alma was the owner of the property. Instead, Alma caused the proceeds to be diverted to MSP Texas which in turn diverted the proceeds to MSP Florida. Alma caused this diversion of the proceeds to Defendants for the purpose of avoiding its obligations to Plaintiff that were in existence (by virtue of the pending lawsuit) when Alma caused the transfers to be made. Since the property that was fraudulently transferred was Texas real property, and the proceeds of the sale are being traced to the Defendants, Texas courts have personal jurisdiction over the Defendants. Furthermore, the Defendants engaged in a civil conspiracy related to the transfer of Texas real property. Further, the corporate veil of Defendants should be pierced relating to these transactions and the corporate defendants are the alter ego of the Pakideh defendants all arising out of their specific contacts with the State of Texas which is another basis that the State of Texas has personal jurisdiction over these defendants. Lastly, this court should impose a trust for the benefit of Alma's creditors on

the proceeds that resulted from Alma's transfer of the property. Plaintiff incorporates the jurisdictional factual allegations noted herein below herein.

## D. VENUE

10.     Venue is proper in Cameron County because a substantial part of the events or omissions giving rise to this claim occurred in this district, and this suit arises out of real property located within Cameron County, Texas. The judgment which Plaintiff is attempting to collect through this suit was issued out of a Cameron County District Court. Further, Defendants sold the Bahia Mar resort located within Cameron County. Thus, venue is proper in Cameron County, Texas.

## E. CONDITIONS PRECEDENT

11.     All conditions precedent have been performed or have occurred.

12.     *Underlying Debt.*    On April 24, 2014, judgment was rendered in Cause No. 2006-07-3289-C, styled *"Bahia Mar Co-Owners Association, Inc. vs. Alma Investments, Inc."* in the 197th Judicial District Court, Cameron County, Texas in favor of Plaintiff and against Alma Investments, Inc., in the amount of $1,009,711.00. (See attached **Exhibit 2**)

## F. FRAUDULENT TRANSFER ACTION

13.     The Bahia Mar resort was apparently intended to be sold during the latter part of 2009 to Bahia Mar Tower, LLC and New Bahia Mar Development, LLC. The deeds initially showed that MSP Texas was the seller, and the settlement statement[1]

---

[1] Plaintiff subpoenaed records from Stewart Title (title insurer for the transaction) as to the identity of the seller and as to the recipient of the proceeds from the sale of the Bahia Mar Resort in a subpoena dated April 1, 2014. On or about April 21, 2014, Stewart Title produced over three thousand pages from their closing file including a settlement statement reflecting a portion of the transaction but not including the Tower sale. The other settlement statement reflecting the Tower sale was not produced nor was information produced by Stewart Title reflecting where the funds were transferred.

shows *MSP Texas (formerly known as Alma Investments, Inc.)* as the party that was to receive $5,740,975.84 in cash. (See **Exhibit 3**) Plaintiff has not located any documents reflecting a merger between Alma and MSP Texas filed with the State of Texas or contained in the closing file so it appears MSP Texas was created for the sole purpose of receiving funds from the sale of the Bahia Mar resort in order to defraud Plaintiff if Plaintiff was successful in its pending lawsuit.

14.    MSP Texas fka Alma Investments, Inc. purported to convey the Bahia Mar Resort to New Bahia Mar Development, LLC and Bahia Mar Tower, LLC during December of 2009. (See attached **Exhibit 4**). However, MSP Texas was not vested with title, and since it did not merge with Alma Investments, Inc., had no title to convey.

15.    Thereafter, Alma Investments, Inc. conveyed the property to New Bahia Mar Development, LLC and Bahia Mar Tower, LLC during the month of July 2010. (See attached **Exhibit 5**) This conveyance was fraudulent as to Plaintiff since Alma Investments, Inc. did not receive the proceeds from the sale of the Bahia Mar Resort. Instead, the proceeds went to MSP Texas according the settlement statement. Plaintiff first learned during the 2014 year that the proceeds from the sale apparently went to MSP Texas and/or to Khalil and Martin Pakideh. Plaintiff could not have reasonably discovered that the funds were transferred to Defendants other than Alma until it obtained the closing file.

16.    Khalil Pakideh was the sole owner of Alma Investments, Inc. Martin Pakideh, his son, was the President of Alma Investments, Inc. On information and belief, these individuals currently have the same positions with Alma. On information and belief, Khalil Pakideh was the sole owner of MSP Texas which was converted to

MSP, and Mr. Pakideh is the sole owner of MSP. Martin Pakideh was the president of MSP Texas and is the manager of MSP.

17.     Defendants Alma, MSP Texas, MSP, Khalil Pakideh, and Martin Pakideh engaged in a civil conspiracy to defraud Plaintiff by moving assets from Alma to the other defendants. Defendants committed the following violations of law under Texas Business and Commerce Code 24.005:

(a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)     with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2)     without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A)     was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B)     intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

18.     Plaintiff asserts that the transfer of real property by Alma in 2010 was fraudulent under 24.005(a)(1) and (2) as to Plaintiff because Alma did not receive any consideration for the transfer and caused the consideration to be diverted to the other Defendants in order to avoid its obligations to Plaintiff.

19.     In determining whether Defendants intended to hinder, delay or defraud Plaintiff under 24.005(a)(1), the following badges of fraud support liability against Defendants as noted hereinbelow:

(1)     the transfer or obligation was to an insider; (Alma transferred the Bahia Mar resort and caused Defendants who are all insiders to receive the proceeds of the sale).

(2)     the debtor retained possession or control of the property transferred after the transfer; (Alma's transferees, who are Defendants herein retained control of the funds resulting from the sale of the Bahia Mar resort)

(3)     the transfer or obligation was concealed; (Alma concealed the identity of the party who received the funds which was only discovered after the closing file was subpoenaed).

(4)     before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (The suit which resulted in a judgment exceeding $1MM had been pending for almost 4 years at the time Alma transferred the properties)

(5)     the transfer was of substantially all the debtor's assets; (Alma's only asset was the Bahia Mar Resort which transferred in its entirety in 2010)

(6)     the debtor absconded; (Alma has allowed its corporate charter to expire and converted MSP Texas to MSP and no longer maintains a presence in the State of Texas; Alma stated in an affidavit in 2013 that it has no funds and is defunct)

(7)     the debtor removed or concealed assets; (Alma caused MSP Texas to convert to MSP and moved the funds resulting from the sale of the Bahia Mar Resort to MSP Texas and/or to the Pakideh defendants)

(8)     the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (Alma received nothing for the sale of the Bahia Mar resort which was valued in the range of $10MM as the money was diverted to MSP Texas)

(9)     the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (Once Alma caused the money from the sale to be transferred to MSP Texas and after Alma conveyed its property in July 2010, Alma became insolvent as this property represented its only asset)

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (The lawsuit had been pending for almost four years when Alma transferred the property and caused the proceeds to be diverted to MSP Texas and other defendants. The lawsuit represented the only remaining obligation of Alma, and the purpose of the diversion of funds was to defraud Plaintiff).

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. (Alma did worse than this; Alma transferred the only assets it had and diverted the proceeds of the sale to insiders).

20. Plaintiff also asserts a fraudulent transfer claim against Defendants under Texas Business and Commerce Code 24.006(a) because Plaintiff's claim (lawsuit) arose before Alma transferred the property in July 2010. Plaintiff's original lawsuit was filed in 2006. When Alma transferred the Bahia Mar Resort as reflected in **Exhibit 5**, Alma did not receive any consideration in return for that transfer. Alma became insolvent as a result of the transfer of this real property. Thus, plaintiff asserts that the transfer of real property was fraudulent under 24.006(a).

## G. ALTER EGO LIABILITY AND PIERCING THE CORPORATE VEIL

21. Plaintiff incorporates herein all of the factual allegations recited hereinabove. Khalil Pakideh and his son Martin Pakideh used the corporate entities of Alma, MSP Texas and MSP as part of a fraudulent scheme to divest Alma of its assets in order to avoid its obligations with Plaintiff.

22. Because the corporate entities were used to perpetrate a fraud, the separate corporate existence of Alma, MSP Texas, and MSP should be disregarded, and the entities, together with Khalil Pakideh and Martin Pakideh, should be held jointly and severally liable for the judgment owed to Plaintiff by Alma.

23. Khalil Pakideh and Martin Pakideh have used the corporate entities of

Alma, MSP Texas, and MSP for their own use and benefit, and have transferred assets between the entities and commingled the affairs of the entities together with their own such that the business entities are one and the same for all practical purposes.

24. Their act of transferring assets among the entities demonstrates that the corporate entities are the alter ego of Khalil and Martin Pakideh. Khalil Pakideh and Martin Pakideh used the corporate entities of Alma, MSP Texas, and MSP and treated them as one and the same for all practical purposes. Their acts of transferring assets between the entities means that the separate existence of the entities should be disregarded and Khalil Pakideh and Martin Pakideh, should be held jointly and severally liable for the judgment owed to Plaintiff by Alma.

## H. CIVIL CONSPIRACY

25. Plaintiff incorporates herein all of the factual allegations recited hereinabove. Defendants conspired to cause the diversion of funds that rightfully should have gone to Alma for the purpose of defrauding Plaintiff. Each defendant was aware of the purpose of the conspiracy and agreed with one another to accomplish it. There was no legitimate reason for funds to have been diverted to MSP Texas that rightfully belonged to Alma. Alma had no incentive to convey its property without receiving anything in return other than to accomplish fraud on Plaintiff. Each corporate defendant was involved in the conspiracy and had knowledge through its corporate representatives of the object and goal of the conspiracy. The conspiracy was not discovered until the year 2014 by Plaintiff and in the exercise of reasonable diligence and could not have been discovered until Plaintiff found out that the funds from the sale of the Bahia Mar resort were diverted away from Alma to other entities.

## I. TRUST FUND DOCTRINE

26.     Plaintiff incorporates herein all of the factual allegations recited hereinabove. The funds from the sale of the Bahia Mar resort should be impressed into a trust for the benefit of Alma's creditors. Alma conveyed its property worth approximately 10MM without receiving anything in return. The funds diverted to Defendants arising from the sale should be held in trust for the benefit of Plaintiff as an existing creditor when the transfer of real property occurred.

27.     As officers and directors of Alma, defendants Khalil Pakideh and Martin Pakideh owed a fiduciary duty to Plaintiff as a creditor to administer the corporate assets for the benefit of the creditors when Alma became insolvent as a result of the transfer of the Bahia Mar resort. Alma and the Pakideh defendants breached this duty so liability for the judgment against Alma should be imposed on all of the defendants jointly and severally.

## J. DAMAGES AND REMEDIES

28.     As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages and seeks the following remedies.

a.     An award of $1,009,711.00 against Defendants jointly and severally which represents the amount of the judgment rendered against Alma.

b.     The levy of execution against assets owned by Defendant MSP including real property located in Florida since MSP received the proceeds from the fraudulent transfer and converted the proceeds into real property in Florida.

c.     The imposition of a lien in the amount of $1,009,711.00 plus pre and post

judgment interest and attorney's fees on real property owned by MSP that was purchased with the proceeds from the sale of the Bahia Mar resort.

d. Prejudgment garnishment (in the amount of the judgment plus interest and attorney's fees) of the funds that were transferred related to the sale of the Bahia Mar resort.

e. Appointment of a receiver to take charge of MSP which upon information and belief was fully funded by the wrongfully transferred assets to protect Plaintiff from further transfers during the pendency of this suit.

## K. PUNITIVE DAMAGES

29. The acts of the Defendants, as above alleged, were willful, deliberate, and intentional and committed as part of a scheme and conspiracy to defraud Plaintiff of property transferred by Alma. This is, therefore, an appropriate case for the award of punitive damages, for which the Plaintiff here sues.

## L. ATTORNEY FEES & COSTS

30. Plaintiff is entitled to an award of attorney fees and costs under section 24.013 of the Texas Business and Commerce Code as determined by the court to be equitable and just and seeks an award of all of its attorney's fees and costs herein.

## M. REQUEST FOR DISCLOSURE

31. In accordance with Texas Rule of Civil Procedure 194.1, Plaintiffs request that Defendants disclose, within 50 days of service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

## N. JURY DEMAND

32. Plaintiff requests at this time that the case be tried by a jury. In conjunction

with this jury demand, Plaintiff is tendering to the District Clerk the requisite jury fee.

## O. PRAYER

33.   For these reasons, plaintiff asks for judgment against defendants for the following:

a.   Actual damages of $1,009,711.00.

b.   Prejudgment and postjudgment interest.

c.   Reasonable attorney fees as are equitable and just.

e.   Costs of suit.

f.   Punitive damages.

g.   All other relief the Court deems appropriate including all remedies allowed under Texas Business and Commerce Code 24.008 and all equitable remedies arising from Plaintiff's causes of action.

Respectfully submitted,

JONES, GALLIGAN, KEY & LOZANO, L.L.P.
2300 West Pike Boulevard, Suite 300
Weslaco, TX 78596
Telephone: (956) 968-5402
Telecopier: (956) 969-9402
E-mail: lakirby@jgkl.com

By:   _____
LANCE A. KIRBY
State Bar Number: 00794096

*Attorneys for Plaintiff, Bahia Mar Co-Owners Association, Inc.*